## RUSSELL *v.* ALLEN.

William Russell, of St. Louis, "for the purpose of founding an institution for the education of youth in St. Louis County, Missouri," granted lands and personal property in Arkansas to John S. Horner and his successors, in trust "for the use and benefit of the Russell Institute of St. Louis, Missouri," with directions to the grantee to sell them, and to account for and pay over the proceeds "to Thomas Allen, President of the Board of Trustees of the said Russell Institute at St. Louis, Missouri," whose receipt should be a full discharge to the grantee. *Held*, that this was a charitable gift, valid against the donor's heirs and next of kin, although the institution was neither established nor incorporated in the lifetime of the donor or of Allen.

APPEAL from the Circuit Court of the United States for the Eastern District of Missouri.

The case is stated in the opinion of the court.

*Mr. William Brown* for the appellant.

*Mr. Chester H. Krum* and *Mr. William R. Donaldson* for the appellee.

MR. JUSTICE GRAY delivered the opinion of the court.

This is a bill in equity, filed on the 16th of April, 1878, by two of the heirs at law and next of kin of William Russell, of St. Louis, against Thomas Allen, to establish a trust in favor of Russell's heirs at law and next of kin, and for an account.

The bill alleges that on the 19th of July, 1855, William Russell and John S. Horner executed four indentures of trust,

by each of which Russell, in consideration of one dollar paid, " and for divers other good and valuable considerations, but chiefly for the purpose of founding an institution for the education of youth in St. Louis County, Missouri," granted and conveyed to Horner, his executors and administrators or successors, in trust forever, certain lands and personal property in the State of Arkansas, to have and to hold the same unto him, his executors, administrators, and successors, in trust " to and for the following uses and purposes, to wit, the said property is conveyed for the use and benefit of the Russell Institute of St. Louis, Missouri ; " and empowered and directed him and them to sell the same as soon as conveniently might be, and to account for and pay over the proceeds yearly or oftener, deducting the reasonable expenses of executing the trust, " to Thomas Allen, President of the Board of Trustees of the said Russell Institute at St. Louis, Missouri, and his receipt therefor shall be a full discharge of the said party of the second part for the amount so paid and the application thereof ; " and Horner's trust to be brought to a close and the net proceeds paid over as soon as conveniently might be, and if not concluded within ten years, the property remaining undisposed of to be sold by public auction and the proceeds paid over as before required. In each of the four indentures reference was made to the three others, and it was " declared that all of said conveyances, including this, are made to one and the same person for one and the same use and purpose, and that the same are and are to be deemed and taken and accounted for as one trust, according to the conditions of the deeds respectively, it having been intended by said deeds and this present one to convey all of the remaining property of the said William Russell in the said State of Arkansas to the said party of the second part, to and for the use and benefit of the said Russell Institute of St. Louis, Missouri." After this clause, in one of the indentures, were added the words, " represented by their president as aforesaid." Each indenture contained a covenant by Horner " faithfully to perform the trust hereby created."

The bill further alleges that Horner, in the execution of his trust, has converted a large portion of the property into money, has paid over to Allen the sum of about $50,000, and has con-

veyed and transferred to Allen the property remaining unsold, and that Allen holds and controls the whole fund, and has never applied to any court for aid in the disposition and application thereof, and has in no way used or recognized the fund as held by him in trust for the uses declared by Russell.

The bill further alleges that there was not at the time of the execution of the indentures aforesaid, nor before or since, any such educational institution as was referred to therein ; that at the time of such execution Russell was from paralysis infirm in body and weak in mind, and that, while he then manifestly proposed to found such an institution, yet in his increasing incapacity of body and mind during the short period that intervened between that time and his death he failed to accomplish his philanthropic purpose ; that he died in 1856, without ever having founded such an institution, or delegated to Horner or to Allen, or to any other person or corporation, authority to organize a Russell Institute, and that 'no such authority has hitherto been exercised or claimed by any person or corporation, and there is and has been no donee capable of receiving, holding, and administering the trust fund created by the indentures ; that the beneficiaries of the trust, so far as can be determined by the terms of the indentures, are uncertain and indefinite, and the trust is invalid, and, there being no debts outstanding against Russell's estate, the trust fund belongs to his next of kin.

To this bill Allen filed a general demurrer, which was sustained and the bill dismissed. 5 Dill. 235. The plaintiffs appealed to this court. Pending the appeal, Allen has died, and his executors have been made parties in his stead.

The deeds of gift state that they are made " chiefly for the purpose of founding an institution for the education of youth in St. Louis County, Missouri ; " they convey the property to Horner and his successors in trust " for the use and benefit of the Russell Institute of St. Louis, Missouri ; " they direct him to sell the property and account for and pay over the proceeds " to Thomas Allen, President of the Board of Trustees of the said Russell Institute of St. Louis, Missouri," whose receipt shall be a full discharge of Horner ; and they end by declaring that all these conveyances shall be deemed, taken, and accounted

for as one trust, and that it is the intention of the donor to convey the property included in all of them " to and for the benefit of the said Russell Institute of St. Louis, Missouri," to which one of the deeds adds, " represented by their president as aforesaid." .

The donor thus clearly manifests his purpose to found an institution for the education of youth in St. Louis, to be called by his name ; and he executes this purpose by conveying the property to Horner in trust, to hold and convert into money and pay that money to the officers of the institute when incorporated and a board of trustees appointed. The direction to pay the money to Allen, as president of the board of trustees, and the mention, at the close of one of the deeds, of the institute as represented by its president as aforesaid, clearly show that the fund is not to be paid to Allen individually ; and while they imply the donor's wish that Allen should be the first president of the board of trustees of the institute, they do not make his appointment to and acceptance of that office a condition of the validity of the gift or of the carrying out of the donor's charitable purpose. The terms of the deeds clearly show that the donor did not contemplate or intend doing any further act to perfect his gift. It is not pretended that the allegations in the bill as to his weakness of body and mind amount to an allegation of insanity, and they are irrelevant and immaterial.

The principal grounds upon which the plaintiffs seek to maintain their bill are that the deeds create a perpetuity ; that the uses declared are not charitable ; and that, if the uses are charitable, there are no ascertained beneficiaries and no donee capable of assuming and administering the trust, and the uses are too indefinite to be specifically executed by a court of chancery. But these positions, as applied to the facts of the case, are inconsistent with the fundamental principles of the law of charitable uses, as established by the decisions of this and other courts exercising the ordinary jurisdiction in equity.

By the law of England from before the Statute of 43 Eliz. c. 4, and by the law of this country at the present day (except in those States in which it has been restricted by statute or

judicial decision, as in Virginia, Maryland, and more recently in New York), trusts for public charitable purposes are upheld under circumstances under which private trusts would fail. Being for objects of permanent interest and benefit to the public, they may be perpetual in their duration, and are not within the rule against perpetuities ; and the instruments creating them should be so construed as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form or manner pointed out by him cannot be followed.  They may, and indeed must, be for the benefit of an indefinite number of persons ; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity.  If the founder describes the general nature of the charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery ; and an omission to name trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead.

The previous adjudications of this court upon the subject of charitable uses go far towards determining the question presented in this case.  As the extent and effect of these adjudications have hardly been appreciated, it will be convenient to state the substance of them.

The case of *Baptist Association* v. *Hart*, 4 Wheat. 1, in which a bequest by a citizen of Virginia " to the Baptist Association that for ordinary meets at Philadelphia annually," as " a perpetual fund for the education of youths of the Baptist denomination who shall appear promising for the ministry," was declared void, was decided upon an imperfect survey of the early English authorities, and upon the theory that the English law of charitable uses, which, it was admitted, would sustain the bequest, had its origin in the Statute of Elizabeth, which had been repealed in Virginia.  That theory has since, upon a more thorough examination of the precedents, been clearly shown to be erroneous.  *Vidal* v. *Girard*, 2 How. 127 ; *Perin* v. *Carey*, 24 id. 465 ; *Ould* v. *Washington Hospital*, 95 U. S. 303.  And the only cases in which this court has followed the

decision in *Baptist Association* v. *Hart* have, like it, arisen in the State of Virginia, by the decisions of whose highest court charities, except in certain cases specified by statute, are not upheld to any greater extent than other trusts. *Wheeler* v. *Smith*, 9 How. 55; *Kain* v. *Gibboney*, 101 U. S. 362.

In *Beatty* v. *Kurtz*, 2 Pet. 566, the owners of a tract of land (afterwards part of Georgetown) laid it out as a town, and made and recorded a plan of it, marking one lot as " for the Lutheran Church;" and the Lutherans of the town, a voluntary society not incorporated, erected and used a building upon this lot as a church for public worship, and fenced in and used the land as a church-yard, for the burial of others as well as of Lutherans, for fifty years. Upon these facts, it was held that the Bill of Rights of Maryland, affirming the validity of any sale, gift, lease, or devise of land, not exceeding two acres, for a church and burying ground, recognized, to this extent at least, the doctrine of charitable uses, under which no specific grantee or trustee was necessary; that this land had been dedicated to a charitable and pious use, beneficial to the inhabitants generally, which might at all times have been enforced through the intervention of the government as *parens patriæ*, by its Attorney-General or other law officer; and that a committee of the society might maintain a bill in equity to restrain by injunction the heirs of the original owners from disturbing that use.

In *Inglis* v. *Sailor's Snug Harbor*, 3 Pet. 99, a citizen of New York devised land to the chancellor of the State, the mayor of the city, and others, designating them all by their official titles only, and to their respective successors, in trust out of the rents and profits to build a hospital for aged, decrepit, and worn-out sailors, as soon as the trustees should judge that the proceeds would support fifty such sailors, and to maintain the hospital and support sailors therein forever; and further declared it to be his will and intention, that if this could not be legally done without an act of incorporation, the trustees should apply to the legislature for such an act, and that the property should at all events be forever appropriated to the above uses and purposes. An act incorporating the trustees was passed, and the hospital was established. A majority of the court held

that the trustees took personally and not in their official capacities, and that upon their incorporation the legal title vested by way of executory devise in the corporation as against the heirs at law ; and the dissenting judges differed only as to the legal title, and not as to the validity of the charitable trust.

In *McDonogh* v. *Murdoch*, 15 How. 367, a citizen of Louisiana, declaring his chief object to be the education of the poor of the cities of New Orleans and Baltimore, made a devise and bequest to the two cities, one half to each, the income to be applied by boards of managers, who should be appointed by either city, but whose powers and duties he defined, and who should obtain acts of incorporation, if necessary, for the education of the poor and other charitable purposes, in various ways specified. And in case the two cities should combine together and knowingly and wilfully violate the conditions, then he gave the whole property to the States of Louisiana and Maryland, in equal halves, " for the purpose of educating the poor of said States under such a general system of education as their respective legislatures shall establish by law." The court held that the devise to the cities was valid, and that the testator's directions as to the management of the income " must be regarded as subsidiary to the general objects of his will, and whether legal and practicable, or otherwise, can exert no influence over the question of its validity ; " and expressed the opinion that the failure of the devise to the cities would not have benefited the heirs at law, for in that event the limitation over to the States of Louisiana and Maryland would have been operative. 15 How. 404, 415.

In *Fontain* v. *Ravenel*, 17 id. 369, a testator, residing at the time of his death in Pennsylvania, appointed his wife and three others to be executors of his will, and authorized his executors or the survivor of them, after the death of his wife, to dispose of the residue of his estate " for the use of such charitable institutions in Pennsylvania or South Carolina as they or he may deem most beneficial to mankind, and so that part of the colored population in each of the said States of Pennsylvania and South Carolina shall partake of the benefits thereof." In that case, the testator had not himself defined the nature of the charitable uses, nor authorized any one but his executors to

designate them; and the point decided was that, they having all died without doing so, the Circuit Court of the United States for the District of Pennsylvania could not sustain a bill to establish them, filed by charitable institutions in Pennsylvania and South Carolina in the name of the administrator *de bonis non* and next of kin of the testator. The question there was, whether the authority of a court of chancery, under such circumstances, belonged to its ordinary jurisdiction over trusts, or to its prerogative power under the sign manual of the crown, which last has never been introduced into this country. See Boyle on Charities, 238, 239; *Jackson* v. *Phillips*, 14 Allen (Mass.), 539, 576, 588. No question of the validity of the gift as against the next of kin was presented; and even Chief Justice Taney, who, differing from the rest of the court, alone asserted that " if the object to be benefited is so indefinite and so vaguely described that the bequest could not be supported in the case of an ordinary trust, it cannot be established in a court of the United States upon the ground that it is a charity," distinctly admitted that a suit by an heir or representative of the testator to recover property or money bequeathed to a charity could not be maintained in a court of the United States if the bequest was valid by the law of the State. 17 How. 395, 396. Accordingly, in *Lorings* v. *Marsh*, 6 Wall. 337, the court dismissed a bill by the next of kin to set aside a bequest by a citizen of Massachusetts " in trust for the benefit of the poor," by means of such incorporated charitable institutions as should be designated by three persons appointed by the trustees or their successors; such a bequest being valid under the law of Massachusetts as habitually administered in her courts.

In *United States* v. *Fox*, 94 U. S. 315, this court, affirming the judgment of the Court of Appeals of New York in 52 N. Y. 530, held a devise of land in New York to the United States, for the purpose of assisting to discharge the debt contracted by the war for the suppression of the Rebellion, to be invalid, solely because by the law of New York, as declared by recent decisions of the Court of Appeals, none but a natural person, or a corporation created by that State with authority to take by devise, could be a devisee of land in that State. Where not prohibited by statute, a devise or bequest for such

a purpose is a good charitable gift. *Nightingale* v. *Goulburn,* 5 Hare, 484, and 2 Phillips, 594; *Dickson* v. *United States,* 125 Mass. 311.

In *Ould* v. *Washington Hospital,* 95 U. S. 303, a citizen of Washington devised land in the District of Columbia to two persons named, in trust to hold it " as and for a site for the erection of a hospital for foundlings," to be built by a corporation to be established by act of Congress and approved by the trustees or their successors, and, upon such incorporation, to convey the land to the corporation in fee. It was contended for the heirs at law that the devise was void, because it was to a corporation to be established in the future, and might not take effect within the rule against perpetuities, and because of the uncertainty of the beneficiaries; and reference was made to the Maryland Statute of Wills of 1798, still in force in the District of Columbia, providing that no will should " be effectual to create any interest or perpetuity, or make any limitation, or appoint any uses, not now permitted by the Constitution or laws of the State," and to a series of decisions in Maryland, holding that the Statute of Elizabeth was not in force in that State, and that charitable uses were there governed by the same rules as private trusts. But those decisions having been made since the separation of the District of Columbia from the State of Maryland, the court held that the case must be determined upon general principles of jurisprudence, and that the devise was valid.

The objection to the validity of the gift before us, as tending to create a perpetuity, is fully met by the cases of *Inglis* v. *Sailor's Snug Harbor, McDonogh* v. *Murdoch,* and *Ould* v. *Washington Hospital,* above cited, which clearly show that a gift in trust for a charity not existing at the date of the gift, and the beginning of whose existence is uncertain, or which is to take effect upon a contingency that may possibly not happen within a life or lives in being and twenty-one years afterwards, is valid, provided there is no gift of the property meanwhile to or for the benefit of any private corporation or person. Those cases are in accord with English decisions of the highest authority, of which it is sufficient to refer to the leading case of *Downing College,* reported under the name of *Attorney-Gen-*

*eral* v. *Downing* in Wilmot, 1 Dick. 414, and Ambler, 550, 571, and under the name of *Attorney-General* v. *Bowyer* in 3 Ves. 714, 5 id. 300, and 8 id. 256, and to the recent case of *Chamberlayne* v. *Brockett*, Law Rep. 8 Ch. 206. See also *Sanderson* v. *White*, 18 Pick. (Mass.) 328, 336 ; *Odell* v. *Odell*, 10 Allen (Mass.), 1.

That the gift is for a charitable use cannot be doubted. All gifts for the promotion of education are charitable, in the legal sense. The Smithsonian Institution owes its existence to a bequest of James Smithson, an Englishman, "to the United States of America, to found at Washington, under the name of the Smithsonian Institution, an establishment for the increase and diffusion of knowledge among men." See Acts of Congress of 1st July, 1836, c. 252; 10th August, 1846, c. 178. This was held by Lord Langdale, Master of the Rolls, in *United States* v. *Drummond*, decided in 1838, to be a good charitable bequest. The decision on this point is not contained in the regular reports, but appears by the letters of Mr. Rush, then Minister to England (printed in the Documents relating to the Origin and History of the Smithsonian Institution, published by the Institution in 1879), to have been made after full argument in behalf of the United States by Mr. Pemberton (afterwards Mr. Pemberton Leigh and Lord Kingsdown), and on deliberate consideration by the Master of the Rolls. History of Smithsonian Institution, 15, 19, 20, 56, 58, 62. And it was cited as authoritative in *Whicker* v. *Hume*, 7 H. L. Cas. 124, 141, 155, in which the House of Lords held that a bequest in trust to be applied, in the discretion of the trustees, " for the benefit and advancement and propagation of education and learning in every part of the world, as far as circumstances will permit," was a valid charitable bequest and not void for uncertainty.

" Schools of learning, free schools, and scholars in universities," are among the charities enumerated in the Statute of Elizabeth ; and no trusts have been more constantly and uniformly upheld as charitable than those for the establishment o.: support of schools and colleges. Perry on Trusts, sect. 700. That the gift " for the purpose of founding an institution for the education of youth in St. Louis County, Missouri," to be

managed by a board of trustees, is sufficiently definite, is shown by the decisions of this court in *Perin* v. *Carey*, and *Ould* v. *Washington Hospital*, above cited, as well as by that of the House of Lords in *Dundee Magistrates* v. *Morris*, 3 Macq. 134.

The law of Missouri, as declared by the Supreme Court of that State, sustains the validity of this gift. In *Chamber's* v. *St. Louis*, 29 Mo. 543, a devise and bequest to the city of St. Louis, in trust " to be and constitute a fund to furnish relief to all poor emigrants and travellers coming to St. Louis on their way *bona fide* to settle in the West," which was objected to for indefiniteness in the object, as well as for want of capacity in the trustee to take, was held to be valid. And in *Schmidt* v. *Hess*, 60 id. 591, a grant of a parcel of land to the Lutheran Church for a burial ground was held to be a valid charitable gift, which equity would execute by compelling a conveyance to the trustees of a church proved to be the church intended by the testator, although it was not incorporated at the time of the gift. We have been referred to nothing having any tendency to show that the law of Arkansas, in which the lands granted lie, is different.

The money paid and the lands, conveyed by Horner to Allen stand charged in the hands of Allen and his executors with the same charitable trust to which they were subject in the hands of Horner.

Steps to organize such an institution as is described in the deeds may be taken either by the Attorney-General or other public officer of the State, or by individuals. Whenever an institute for the education of youth in St. Louis shall have been incorporated and shall claim the property, it will then be a matter for judicial determination in the proper tribunal whether it meets the requirements of the gift. The only question now presented is of the validity of the gift as against the donor's heirs at law and next of kin.

*Decree affirmed.*