# ASOCIACIÓN DE SEÑORAS DAMAS DEL SANTO ASILO DE PONCE

*v.*

## JOSEFA DIANA Y MARTINEZ ET AL.

---

Ponce, Equity, No. 198.

1. A devise of real estate to L. in trust for life, with power to name a trustee to succeed him, and so *ad infinitum*, on condition that a charitable institution shall receive annually one half of the income from the property, the other half to the trustee for his services, does not constitute a perpetuity, and is not contrary to law, if there is no prohibition against the sale of the property.

2. The testator has power to engraft conditions on the trust and to provide that failure on the part of the trustee to perform them shall terminate the trust, and such conditions may be self-operating.

3. Acts on the part of one claiming to be the trustee, not consistent with the trust relation, but tending to defeat its purpose, may be shown by the beneficiary in a proceeding to declare the trust terminated.

4. The fact that the beneficiary accepted from such person sums of money purporting to be paid under the terms of the trust will not estop it from alleging that such person is not in fact such trustee.

5. A person claiming to be the trustee and performing acts as such cannot plead the statute of limitations against the beneficiary.

6. The power to L. to name his substitute trustee provided that such substitute trustee should immediately, on taking possession of the estate, designate his substitute trustee. Under those conditions L. could not designate a minor and provide that during his minority his curator should act for him. Such an appointment was void, the trust ended,

II. PORTO RICO.—24.

and, under the provisions of the will, the beneficiary became *ipso facto* the absolute owner.

Decree filed February 8, 1907.

---

*Messrs. Pettingill & Leake,* solicitors for plaintiff.

*Messrs. Tord, Toro, & Canales,* solicitors for defendants.

RODEY, Judge, delivered the following opinion:

This cause was tried before the court by consent of counsel in open session, without the intervention of an examiner or master. The complainant is apparently a secular, charitable corporation or association, organized by a royal decree of the Spanish Crown on November 11, 1863 (2 Leg. Ult. Marina, Rodriguez San Pedro, p. 201), having its headquarters at Ponce, in the island of Porto Rico, and, as appears by letters and certificates from the insular authorities, duly authorized to continue business in the island at and since the time of the filing of the suit. No point is made in the pleadings as to the capacity of the complainant to sue or be sued. The respondents are all citizens of Porto Rico.

It is a suit in equity, praying that the court declare that, under the terms of a certain will, to be hereinafter referred to, the complainant is the owner of a considerable amount of real estate, some five or six hundred cuerdas, in and near said Ponce, and that the possession thereof by the respondents under claim of ownership, under lease or otherwise, be declared wrongful, and complainant given the absolute possession of the whole of the same, and that an accounting be had between the parties and

Asociación de Señoras v. Diana y Martinez.

a decree rendered in favor of complainant for such sum as shall be justly found to be due it from the respondents or either of them.

It seems that some thirty odd years ago, there lived on the south side of the island of Porto Rico, at or near the said city of Ponce, an old bachelor without family or heirs, by the name of Juan Bautista Silva, who owned a considerable amount of real estate and was possessed of cash and other property, though the former does not seem to cut much figure in this case, and by his will, made on the 17th day of September, 1873, left it (save a couple of minor bequests) to a friend of his, to be managed during the friend's lifetime, and a half of the net product turned over to the complainant for use in its charitable work, the remaining half to be kept by the friend for his trouble. This friend, on taking possession of the property, was to make a will designating who should be his successor in the management and possession of the estate, and that successor, on taking possession, was to do likewise, and name another successor, and so on,—the estate to be kept together indefinitely. But it was provided that, if a successor was not so named, then the property should go entire to the complainant if it still existed; but if not, then to certain other institutions or parties as will be gathered from the terms of the will itself, a translation of the material parts of which is as follows:

"Item: Inasmuch as I have no forced heirs, and what I possess I do not desire that it be dismembered, as it has cost me many years of work and economy, it is my deliberate will that, after the extraction therefrom of the legacy hereinbefore mentioned for Maria Juliana and Ramona Isabel, daughters of the emancipated Carmen, and two cows with calves, one for each of them, as also what is necessary to cover the expense of my ill-

ness and burial, then all my other remaining property, composed of lands, animals, and debts due me as mentioned, shall be delivered to, and my good friend Don Juan Apolinario Laboy, of Ponce, shall take possession and charge of the same, as he has merited my confidence for years and serves me and attends to me in my illness so disinterestedly, so I name and constitute him as my sole and only voluntary heir to said estate during his life (á quien nombro é instituyo por mi único heredero voluntario de dichos bienes durante su vida) with the following precise conditions imposed on him:

"First: That the net usufruct from said estate, after paying the municipal taxes and others imposed for the same purpose, be divided in two equal parts, one portion for said heir, Laboy, as a just recompense for his good administration and zeal for said interest, and the other portion to attend to the poor sick of the Santo Asilo de Caridad de las Damas de Ponce, which liquidation of products and delivery of this part shall be executed at the end of each year by said administrator heir without any other outside intervention of any kind, as a duty to be performed by the dictates of conscience, and because the product of such properties as I leave depends more or less on the different seasons of the year being favorable or not and that the rain fail not in the district.

"Second: As it is my special object that my properties (bienes), which have cost me so much privation and work, be not divided, I therefore desire that at the death of Laboy they shall pass, with proper inventory and statement, to the power and possession of the person who shall deserve the confidence of the said Don Juan Apolinario Laboy, who shall have the same power and privileges and hold it for the same object hereinbefore mentioned.  To which end, at the moment of my death, when he

enters into possession of my estate, he shall precisely execute in due form his final testamentary disposition, wherein he shall determine the person who shall succeed him in said charge or trust, and whose power of substitution, which I grant for such object unto Laboy, shall be transmitted by the latter, as I have stated before, to a person having his confidence, and so on successively, always by a formal will or other formal act, which shall be executed by them successively at the moment they shall be put in charge as substitute heir; and—

"Third: That if, for any reason, this condition of substitution is not complied with opportunely, as I have recommended, or if, by reason of any claim of my relatives or strangers to me, or for any other reason or claim that it is or is supposed to be vacant, or the property unbequeathed by will, then the said inheritance or property that constitutes it, I want, and it is my will, that in this latter case and at the death of the said Laboy, my first heir, the said estate shall pass to the said Santo Asilo de Damas in Ponce, which I name as my substitute heir, and in this case I especially recommend to this association that said estate be preserved as far as possible under good administration, and that only the net product obtained from same be employed in helping the poor sick of said establishment.

"Item: I appoint as my faithful testamentary executor of this, my final disposition, my said friend, Don Juan Apolinario Laboy, with fullest powers that right requires for free, frank, and general administration, and relieving him of giving bond or other guaranty.

"At this same time, and before closing this instrument, I, the testator, declare, ordain, and command that in case it shall come to pass that the inheritance shall fall to the Santo Asilo de Ponce, as I foresee, under the third condition of the sixth clause

of this my will, and if for any reason said charitable establish-
ment shall not exist or shall have then disappeared, in such case
the inheritance shall go, under the same conditions and powers,
to the Instituto de Segunda Enseñza of Ponce; and when this
latter shall unfortunately not be in existence, then the inherit-
ance shall fall to the work or establishment most deserving and
in most need in the said town of Ponce, because I was born in
said district and all my best wishes are in favor of it, and there-
fore under no circumstances shall it be employed outside of the
district under any pretext or for any reason."

About a year and a half after the making of this will, and
on the 15th of May, 1875, the testator, Silva, died, and the
friend, Juan Apolinario Laboy, took possession of the estate and
complied with the terms thereof as to the special bequests, ad-
ministered the estate during his lifetime strictly in accordance
with the will, delivering to the complainant half of the income
of the estate, to its satisfaction. About this same time, and in
further compliance with the will, this friend Laboy made his
own will, or some similar instrument, and in it named as his
successor to manage this estate, his wife, Dominga Fernandez
Verdez, and set out in the instrument that in case of her death,
he named in her stead his foster son, José Laboy.

That the said first manager, trustee, or whatever he was, Juan
Apolinario Laboy, died in about the year 188– and his said wife
at once entered upon the possession and administration of the
estate under the terms of his said appointment, and in like man-
ner fully complied with the terms of the Silva will, and gave
half the product of the estate to the complainant, to its entire
satisfaction, and continued so to do up to the 15th day of Jan-
uary, 1891, when she died. But this trustee or manager, which-
ever she was, in her lifetime failed to comply with the provision

of Silva's will which required her, upon taking possession of the estate, to make her own will or by some other such act to name her successor, and for this reason the complainant insists that the third or alternative provision of the Silva will, entitling complainant to the immediate possession of the entire estate, became operative, and that the foster son, José Laboy, by operation of law, faded out of the equation as soon as his foster mother took possession of the estate; but, notwithstanding these facts, the said José Laboy, immediately upon the death of his said foster mother, went into possession of the estate and managed it up to the time of his death, which occurred on the 13th day of November, 1903, and, after taking possession of it, executed, on the 4th of October, 1893, a public document called a "substitution of heirship," wherein he recited that, having taken possession of said estate, under the provisions of the Silva will, after the death of his foster mother, he must comply with the provision of the will of Silva in the appointment of his own successor, and for that purpose named his wife, the present respondent Josefa Diana y Martinez, and attempted to confer upon her the powers which he claimed had been conferred upon himself by his foster father, Juan Apolinario Laboy, having made him alternative under the Silva will; and thereafter, just before the time of his death, in 1903, he, the said José Laboy, made his own will and in it, after reciting the facts, attempted to ratify his act in substituting his wife as the trustee or manager under the Silva will.

That, upon the death of her said husband, José Laboy, as aforesaid, his said wife, this respondent Josefa Diana y Martinez, claiming to act under the public document and will so executed by her husband, took possession of the said estate and has so continued up to the present time.

It appears also that the said José Laboy in his lifetime made long leases of different portions of the land in question, of some of which leases the complainant had notice and received its share of the rents therefrom; but, shortly before his death, the said Laboy renewed several of them without notice to the complainant, for long terms, and in several instances received his half of the rent in advance, and in some instances even discounted his share to get the cash in hand. These leases are alleged to have been made for ridiculously low rentals. After his wife, the respondent Josefa Diana y Martinez took possession, she also, without notice to the complainant, extended some of these leases for long terms, beginning in the future, also, as it is claimed, at ridiculously low rentals. Finally, without notice to the complainant, she attempted to, and did, get, under the local statutes of the island, a possessory title to all the same, still without notice to the complainant, when it received knowledge of her acts through the legal notice which the local court caused to be published, and then came in and opposed her application and defeated it. This respondent Josefa, about the time she began to make efforts to get this complete title in herself, some time in the year 1904, ceased to make any payments of the usufruct or profits of the estate to the complainant, and the latter, on ascertaining her intention in the premises, brought this suit.

The answer to the complaint admits the facts above stated as to the making of the original will and the substitution of the said Dominga Fernandez Verdez as his successor by the said Juan Apolinario Laboy, and the naming of his foster son, the said José Laboy, as alternative substitute as aforesaid, and that the said Dominga Fernandez Verdez did not execute any instrument designating any successor of herself to manage said estate,

but alleges that her foster son, José Laboy, became entitled to manage said estate by reason of the fact that, under her will, made in 1869,—some four years before the making of the original (Silva) will,—he, the said José Laboy, was her universal heir, and therefore became entitled to all her property, including whatever rights she had in the Silva estate, the latter, of course, being subject to a servitude or lien running with the land, to secure the payment of half the net usufruct to the complainant. The answer denies that the failure of Dominga Fernandez Verdez to appoint a successor in the management of the estate, as provided in the Silva will, in any manner violated its provisions, because (as alleged) the law existing at that time forbade perpetuities of any kind, and that therefore the first beneficiary, Juan Apolinario Laboy, in fact received the title in fee, subject only to the servitude to run with the land. In other words, the answer sets out and contends that, under the Silva will, the property went absolutely to the said Juan Apolinario Laboy, with power in the latter to sell or transfer the same *inter vivos* whenever he chose, or to will it away or dispose of it in any other manner, but at all times subject to the servitude in favor of the complainant for the net half of the usufruct thereof.

The answer further contends that the complainant ratified the act of the said José Laboy in so taking possession of the Silva estate and renting portions of the same to divers persons, by accepting its share of the rent with full knowledge of the facts, and pleads estoppel against it in that behalf. And in like manner alleges the knowledge of the complainant of the taking possession of the said estate by the respondent Josefa Diana y Martinez after the death of José Laboy, her husband, and the acceptance by the complainant of rents at such time in

the premises, and because of this, also, pleads estoppel against the complainant.

It further denies that the respondent Josefa Diana y Martinez has ever refused to recognize the rights of complainant, but claims that she is the legal owner of the said estate and entitled to the possession of the same, and admits that she obtained a possessory title thereto by due process of law, but denies that she acted fraudulently in so doing, as alleged, and asserts her good faith in the premises, because, as alleged, she always recognized the rights of the complainant.

It further admits the making of every lease set up in the complaint, but insists that the same are reasonable, considering the condition and the amount of improvement necessary to be made; that the lessees had no knowledge of any incapacity in the said José Laboy or his wife, the respondent Josefa, to make or extend the same; and that the complainant stood by and saw the same made, and accepted rents thereunder, and permitted, without objection, the lessees to go to great expense in and about such improvements, and that therefore complainant is estopped, etc.

Respondents further allege that on the 27th of January, 1905, complainant stipulated with one of the respondents, Julio N. Chardon, that in case complainant won this suit, the said respondent should be entitled to continue in possession of the portion of the land he has under lease, at an increased rental.

It further admits certain allegations of the bill about money belonging to the estate, that was loaned out on mortgage and the property afterwards transferred to the party in possession of the estate, and admits that such property belongs to the estate, and that complainant is entitled to half the product thereof. It closes by claiming that the only remedy complainant

has is an action at law for its share of the profits, and that, at any rate, respondent Josefa Diana y Martinez has been in undisputed possession of the estate for more than ten years and that such fact gives her good title, etc.

At the trial, the complainant introduced in evidence all the several wills, documents, leases, renewals of leases, etc., referred to in the foregoing statement, and in addition, produced oral testimony which was taken down verbatim and filed in the cause. The oral testimony completely sustains the allegations of the bill, and, in the opinion of the court, shows on behalf of the said José Laboy and his wife, the respondent Josefa Diana y Martinez, a gross, and in law a fraudulent, disregard of the rights of the complainant in the premises, even if they were rightfully in possession of the land under the Silva will. These two persons, without notice to complainant, extended leases on different portions of this property for terms beginning at the end of existing leases sometimes four or five years in the future, and running for periods from five to fifteen years, several of them to expire as late as the year 1919. Under the will this was grossly wrong, because, should either of these managers die (as José in fact did), it left the estate without means to induce anyone to manage it during the unexpired term of such leases. This was all done at a time when rental values of such lands, large portions of which are planted in cane and capable of being prepared for cane, were fast increasing in value, and when large portions thereof were worth as high as $6 to $12 per acre, and even more. And some of the leases and extensions of leases were made for less than $1 an acre, and none of them were made for anything like what the proofs show was the real rental value thereof at the time. A feeble attempt was made to show that at the time, and under the conditions, the leases and

extensions were reasonable, but it was a miserable failure. The best evidence of the inadequacy of the price is the fact that one of the lessees, Chardon (exhibit Q), came in during this litigation and agreed with complainant to increase the rental of the 400 cuerdas he holds from $240 per annum to $1,350 per annum.

The assignments and leases introduced in evidence all bring the land into the possession of the parties named as respondents here. The proofs further show that in every instance these extensions of leases *in futuro* were made without the knowledge of the complainant, and the said José Laboy or his wife, the said Josefa Diana y Martinez, received their half of this ridiculously low lease money in advance, and at times even discounted it for cash in hand. It further appears that in all these leases or extensions of leases, the whole status of the estate was set out by proper reference and recitals of the material portions of the Silva will and the succession of managers and leases thereunder, and therefore it is manifest that every person who dealt with Laboy or wife was not only charged with, but in fact had, actual notice of their situation and their powers and rights in the premises and the rights of this complainant.

The first question for the court to determine is: What was the intention of the original testator, Juan Bautista Silva, as set out in his will, and what sort of a right under it did his friend Juan Apolinario Laboy and the complainant, respectively, have? From the terms of the will itself, as above quoted, and notwithstanding the not very specific phraseology of the scrivener who wrote it for him, it can be plainly seen that Silva intended the poor of Ponce to be the real beneficiaries, and that, so long as it should be in existence, the complainant should receive one half the profits of the estate, to be expended by it for the benefit

Asociación de Señoras v. Diana y Martinez.

·of said poor. It is equally apparent that Silva never intended to confer upon his said friend, Juan Apolinario Laboy, anything but a sort of life administration wage-profit in the estate, ·coupled with the duty to name anybody he had confidence in, ·as his managing successor. It may be that, strictly speaking, the legal title passed to Laboy on Silva's death, but the equitable title certainly went to complainant. So it can be seen that, ·at all events, he intended this first manager to possess the wage-·earning interest in the estate during such friend's life, and that thereafter, on the occurrence during the administration of any succeeding manager of any of the contingencies he .provides ·against in the will, the complainant's absolute right to the immediate whole title and possession of the entire estate was at once ·to arise. We cannot. avoid this conclusion, notwithstanding the contention of counsel for respondents that failure of a trustee or manager, to avail complainant, must occur exactly at the time of the death of Juan Apolinario Laboy. We think the will looked to these contingencies as possible of arising during an indefinite period in the future. We are sustained in this view fully, we believe, by the reasoning of Mr. Justice Gray of the Supreme Court of the United States in Barber v. Pittsburgh, Ft. W. & C. R. Co. 166 U. S. 83, 41 L. ed. 925, 17 Sup. Ct. Rep. 488, which opinion was delivered on a somewhat analogous state of facts, but is too long to be quoted here. Neither do we think it material to speculate as to whether the Silva will created an estate that can be called a *fidei-commissum*.

We`do not think that there is anything connected with this case that makes it subject to either the English or American chancery rule against perpetuities or the civil law rule in that same behalf. In fact, the Spureme Court of Spain in the Roca Case, Alcubilla, Tomo 7, Pag. 1013, December 29, 1886, held,

Asociación de Señoras v. Diana y Martinez.

in a practically similar case to this, that the essential character
of the *vinculación* of property consists in the absolute prohibi-
tion to sell the same, and this we think is exactly the rule under
the common law, and in the several states of the Union.   That
court further held in that same case that the law of Spain of
October 11, 1820, only rendered such lay or ecclesiastical in-
stitutions incapable of acquiring property when, under the laws
and their own regulations, they could not dispose of the same;
and it held in that particular case that as Roca left his property
in favor of the sick poor domiciled in Badalona, and appointed
as administrators of the property, the parish priest and the
vicar, both present and future, and others, to devote the pro-
ceeds to that purpose, it was a legitimate gift, and could not be
attacked by the heirs of the testator.   That court further held
that there is nothing in the law of 1820 of Spain that prevents
an annual or perpetual legacy to be made in favor of a charitable
institution, provided that, in the form of such legacy, no di-
rect or indirect amortization of property is made, and it cites
also a "sentence" of the same court of date November 3, 1890.
Both these decisions were after the date of the will here, which
was made, as will be seen supra, in 1873; and the last decision
was after the adoption of the Spanish Civil Code, in 1888.

In that same volume of Alcubilla, at page 830, several cases
from the Supreme Court of Spain are reported, showing that
the law of 1820, preventing perpetuities and mortmains, which
was modified in 1855 and re-established in 1856, does not pre-
vent even an institution that might, because of its structure,
be subject to the rule against mortmains, from receiving a gift
such as this is.

The complainant, in our opinion, while it is apparent from
the royal decree that created it (*vide* reference supra) that parts

of its management are in charge of the Sisters of Charity, who, perhaps, have extrajudicial mortmain succession under their customs, is essentially a lay institution. It is managed by a committee of ladies of the community, both married and unmarried, and without reference, so far as indicated by their charter, to their religious beliefs, and is kept up by public subscription and the income from gifts to it; and above all, it is fundamentally a charitable institution of the most unquestioned kind. Further, there is nothing in or about its charter or makeup that necessarily keeps it from disposing absolutely at any time of the whole or any portion of its property, unless the conditions of any particular gift can be said to impose that condition.

Whatever may be the rule in Spain at the present time with reference to this sort of gift,—and we contend that it is the same as it is in the several states of the Union, and does not prohibit the same,—we are of opinion that the general policy of the government of the United States must now apply, unless the local law supervenes to prevent, which we do not think is the case. And we find the law to be that not only are such charitable gifts as this permitted, but they are, as indicated by the Supreme Court of the United States, actually favored, as being for public benefit. Instances of such gifts for scientific, educational, charitable, and other purposes are of frequent occurrence, as, for instance, the Stephen Girard gifts to Philadelphia, the Carnegie library gifts, the Smithsonian Institution at Washington, numerous hospitals and orphanages all over the nation, and many other such institutions.

To sustain complainant's contention in this case, one need do but little else than read the opinion in the great case of McDonogh v. Murdoch, 15 How. 367, 14 L. ed. 732. It is

a case bearing great resemblance to the one at bar. There it was squarely held in the opinion that if any condition was attached to the gift that was contrary to law, under the laws of Louisiana, such conditions would be considered as not written in the will, and that is exactly the provision of Spanish law and of the old and new Code of Porto Rico.

Mr. Justice Gray in the case of Russell v. Allen, 107 U. S. 163, 27 L. ed. 397, 2 Sup. Ct. Rep. 327, in an opinion that amounts in itself to a most valuable treatise on the questions we are discussing, reviews all the American and English cases on this subject of prohibition of perpetuities and mortmain donations up to that time (1882) and uses language particularly apt here, that: "The testator's directions as to the management of the income 'must be regarded as subsidiary to the general objects of the will, and, whether legal and practicable or otherwise, can exert no influence over the question of its validity.' "

We are of opinion that this complainant has full capacity to receive this gift under this will, and that, in any event, it only lies in the mouth of the residuary legatee or beneficiary, or the government itself, to question its possession, which can be done if the same is proper, at any future time, if complainant retains or uses it contrary to the will. However, the respondents have not questioned complainant's right to take the property; they only contend that the first trustee or manager under the terms of the will took the estate in fee, subject only to a servitude in favor of complainant. With this contention we need have no quarrel, because whether to that extent it is right or wrong, we are utterly unable to agree with respondents' further contention that, subject to this servitude, any of the so-called managers could have willed away the property, save in

the manner prescribed, or leave it to his heirs. The contrary intent of the testator is too apparent from the portions of the will above quoted, particularly the last clause, that speaks of the Instituto de Segunda Enseñanza of Ponce, and other beneficiaries. We find nothing in the sections of the statutes of Porto Rico quoted by counsel for respondents that in any manner militates against the views here expressed.

As to that portion of the answer setting up the statute of limitations, we do not think the point is well taken. José Laboy and wife, it is true, went into possession of this estate and managed it, but they paid rents to the complainant during their management and this fact alone would, we think, be sufficient to show that they did not hold adversely in the sense of any prescriptive statute, but in addition, in every lease they or either of them made of the property, they set out in recitals that they held under the Silva will, etc. Lapse of time under circumstances like these is no bar to the complainant's right. Oliver v. Piatt, 3 How. 333, 11 L. ed. 622.

Now, it may be argued that, under the second clause of the portion of the will above quoted, all that Silva's friend Laboy had to do was to name "a person deserving his confidence," to manage the estate, and that, as he did name his wife for that purpose, he probably had a right to name any other person then in being and *sui juris,* as alternate. This might be admitted, and if his wife failed to qualify or to act, it might well be contended that the alternate could then qualify, take possession, and proceed to act. But although he might have a right (which we do not admit) to name such alternate if such person was then living and of age, we do not think that he would have such right if the person was, as was really the fact in this case, a mere infant, because José Laboy, his foster child,

II. Porto Rico.—25.

was then but fifteen years of age, for which reason Juan Apolinario Laboy, the foster father and Silva's friend, was forced to provide in the appointing instrument (exhibit B), that should said child still be a minor when his alleged right to manage the estate accrued, Don Juan Vazquez would be curator of the minor's estate and presumably take charge for him. We do not think Silva ever contemplated such a proceeding.

Furthermore, according to the Silva will, each person that legally took charge of the estate became at once vested with the exclusive right to name the person of his own confidence who should succeed in the management, and for that reason we cannot avoid the conclusion that the moment Laboy's wife, Dominga Fernandez Verdez, took possession of the estate, all right in José Laboy, the alternate, ceased until thereafter by her specifically named as her successor in the manner provided in the will. She having died without naming any successor to manage the estate, we must and do hold that the contingency foreseen by Silva, that the "condition of substitution is (was) not complied with opportunely," arose, and therefore the estate passed to complainant. José Laboy was a stranger without right when he entered the possession, and being so, he could not name anybody to succeed himself in the possession or management of it. He was a tenant at will, an occupant by license or acquiescence only, and subject to removal at the will of complainant. We must therefore hold that his naming of his wife, Josefa Diana y Martinez, as his managing successor, was beyond his power, and that she is now illegally and wrongfully in possession of the estate.

The intention upon her part to hold adversely to complainant is made manifest by evidence introduced in the case, particularly by certificates from the title registry office and the local insu-

Asociación de Señoras v. Diana y Martinez.

lar court (exhibits O and P), that when she attempted to get a *posesorio* title, which she in fact did secure, she alleged in her petition that it was "inconvenient" for her to show, as required under the local statute, by what right she claimed to be in possession of the lands, and continued the same attitude when she thereafter endeavored to have the *posesorio* title ripen into a *dominio* title, but in which latter effort she was thwarted by the accident of complainant's manager seeing the advertisement which the local tribunal obliged her, under the law, to publish. We cannot see how she can claim good faith as to this, because she well knew how she came to be in possession, and good faith would indicate that she needed no better title than she had, if she was properly in possession of the estate..

On the whole case, therefore, we feel constrained to hold, and do hold, that the complainant is now vested with the legal title to, and the right to the immediate possession of, the entire Silva estate under the Silva will, and subject to the terms and conditions thereof, and subject also to its own act as to the right of respondent Julio N. Chardon under exhibit Q, as we feel that, under that exhibit, complainant has estopped itself from any accounting as to him, and has conceded him a lease and possession that is good in law under its terms.

As to the respondent Josefa Diana y Martinez, she will, therefore, be required immediately to give up the possession of the entire estate to the complainant, and she and the respondents Tomas Torres and Carlos Cabrera will be, and they hereby are, required to account to the complainant in the premises as follows: The said Josefa Diana y Martinez for the reasonable rental value and income, as the case may be, of the portion, if any, of said estate, real or personal, held by her alone, since January 1, 1904, which we think is a reasonable date to

Asociación de Señoras v. Diana y Martinez.

begin such accounting, as she alleges in her application for possessory title, made some short time previous to March, 1904, that she was held adverse possession of the entire estate since the 13th day of November, 1903 (presumably the date of the death of her husband); and the said Carlos Cabrera from August 1, 1904, for the portion held by him under exhibit J, which is the date of the cessation of the receipt of rent by complainant in the premises, and the said Tomas Torres from August 1, 1905, for the portion held by him under exhibit G, which is the date of the unlawful renewal of his alleged lease. And all the renewals of leases so made by either the said José Laboy in his lifetime, or since his death by his wife, the said Josefa Diana y Martinez, and under which or the renewal thereof or under sub-leases of which, any of the respondents now hold any of the property, will be, and they are hereby, canceled and held for naught, and all respondents holding under any of the same will be, and hereby are, required immediately to give up the possession of the lands, property, and premises thus held, to the complainant, saving only the exception hereinbefore indicated with reference to respondent Julio N. Chardon; and all respondents will be required, within twenty days from the filing hereof, to execute all necessary deeds, releases, quit claims, or other instruments necessary, and in default of their so doing, the court will, if necessary, appoint a person to make the same.

The accounting here provided for will be had as soon as may be, either by the court or by an examiner or master to be appointed for that purpose, as may be thought best, and the cause will be retained for such purpose and any other purpose in the premises that may prove to be necessary; and to this end only, this opinion will be held to be interlocutory.

Proper writs of possession, orders, and decrees for the purpose of properly correcting the entries in 'the local land registry office, and to vest the legal title and possession of the entire estate under proper description in the complainant, and the cancelation of the leases, and the doing of all other things hereunder as may be required, will be prepared and entered of record, and it is so ordered.