HLEBANJA, Respondent, v. BREWE, Appellant.

(236 N. W. 296.)

(File No. 6788.   Opinion filed April 21, 1931.)

*Sutherland, Payne & Linstad,* of Pierre, for Appellant.
*O'Keeffe & Stephens,* of Pierre, for Respondent.

MISER, C.   Appellant, Brewe, is the chairman of Pleasant Vale school district No. 53 in Stanley county.   Respondent is a resident of that school district and the father of two children who ordinarily attended a school in that district.   In August, 1926, that

school was discontinued by the district board. On the application of respondent, the county superintendent made an order in reference thereto in part as follows:

"Therefore, I do Order the School Board of this District, as follows:

"That these parents be paid at the rate of $16.00 per month for the four months in which the roads will be passable to the Brady school and at the rate of $5.00 a week for each child for the five months in which traveling that distance would be a hardship for the children. The amount paid would be of course based on the actual attendance in school of each child.

"That these parents be allowed to send these children to any school in the state they see fit for the nine months of this term."

Thereupon respondent sent his children to St. Martin's Academy, a private school conducted by the Benedictine Sisters, an order of the Roman Catholic Church, at Sturgis, in Meade County, during the school year of 1926 and 1927. Respondent paid the board, tuition, and expense of schooling said children, amounting to approximately $500, and at the close of the school year filed with the school board his claim against the district in the sum of $288. The schoolboard approved and allowed the claim. The clerk issued to respondent a warrant of said district for that sum. On presentation of the warrant to appellant as chairman he refused to countersign the same.

Appellant, in his return to the alternative writ of mandamus obtained by respondent, in showing cause why he had not done, and could not do, the things in the writ commanded, among them the countersigning of the warrant, alleged that respondent did not cause his children to attend a public school during the school year of 1926 and 1927, but, instead, placed his children in a religious and sectarian institution; that appellant was prohibited by section 3 of article 6 and by section 16 of article 8 of the Constitution of South Dakota from signing the warrant presented for his counter signature, by which public moneys would have been appropriated to the aid of a sectarian school; that prior to the commencement of the action the superintendent of public instruction of the state of South Dakota had, in writing, advised the superintendent of schools of Stanley county that the claim of respondent was not a proper charge against said school district,

and that the warrant for which appellant's counter-signature was sought was illegal. The trial court, after hearing had, issued the peremptory writ requiring appellant to countersign the warrant.

Section 7490, R. C. 1919, amended by chapter 214 of the Laws of 1921, is in part as follows: "Any school in a common school district may be discontinued by the district board, provided proper arrangements are made for the schooling of all pupils of the district in other schools, if in the judgment of the district board such action is to the best interest of the pupils and the district. The school board may make arrangements for the transportation of the pupils * * * or it may pay for the lodging and board of such pupils in lieu of transportation. Provided further, that if such pupils are assigned to schools outside the district, all tuition charges shall be paid from the funds of the district in which the parents of such pupils reside. * * * Provided further, that any parent or guardian not satisfied with the arrangements made for the schooling of the children under their control may appeal to the county superintendent whose decision in the matter shall be final."

Section 7485, as amended by chapter 170, Laws of 1923, made it "the duty of the district school board to make such provisions as shall be determined by the county superintendent for the schooling of the pupils who would ordinarily be in attendance at the school were it not discontinued."

The primary obligation of a school board is to maintain the schools in the district. This obligation is not discharged by merely paying to parents of school children a sum in lieu of the cost of keeping school open. The making of proper arrangements "for the schooling of all pupils of the district in other schools" is a responsibility of the school board which inseparably accompanies the determination by the school board that the school be discontinued. True, "any parent or guardian not satisfied with the arrangements made for the schooling of the children under their control may appeal to the county superintendent," but the responsibility of making proper arrangements for the schooling of all pupils in some specific public school and of paying "for the lodging and board of such pupils in lieu of transportation if in the judgment of the district board such action is to the best interest of the pupils and the district," and of paying all tuition charges "from the funds

of the district," is the responsibility of the school board. But whether the provision for the schooling of the pupils be made under section 7485 or under section 7490, or by construing the two statutes together, the school to which the pupils are assigned must be a specified public school. The responsibility of making provision for the schooling of the pupils is not discharged by paying or becoming liable to pay a sum of money in lieu thereof to the parents of such pupils, and permitting them to send their children where they will.

■■ It is true that parents who prefer to send their children to private or sectarian schools are permitted to do so, but school boards and county superintendents have no statutory authority to use public school moneys for that purpose. As recently stated in Re Formation and Organization of Common School District, etc., (S. D.) 234 N. W. 763, a parochial school is no part of the public school system of the state. Irrespective of the constitutional provisions relied upon by appellant, Pleasant Vale school district is not liable for the cost of schooling respondent's children at St. Martin's Academy under the statutes. It not being a public school, legal arrangements could not have been made either under section 7485, as amended, or section 7490, as amended, whereby the school district would be liable to it for the schooling of respondent's children.

■ But it is suggested that, even though the contemplated employment of public school moneys is illegal, it is yet the duty of appellant district chairman to countersign the warrant; that though the order of the county superintendent was extra legal and the school board had no lawful authority to allow the claim, yet when the claim was allowed, and no appeal was taken therefrom, as permitted by section 7492, R. C. 1919, it was the duty of appellant to countersign the warrant under section 7474, R. C. 1919, which is in part as follows: "The clerk shall draw and sign all warrants for the payment of money for purposes legally ordered by the board, and every such warrant shall be countersigned by the chairman of the board."

That the countersigning by the chairman of the district board of school warrants is ordinarily a purely ministerial duty may be admitted. Even so, is respondent entitled to a writ of mandamus to compel appellant to countersign a warrant whereby he may

obtain money from a school district to which he is not legally entitled?

In Duncan Townsite Co. v. Franklin K. Lane, 245 U. S. 308, 312, 38 S. Ct. 99, 101, 62 L. Ed. 309, 311, opinion by Brandeis, the Supreme Court of the United States says: "Mandamus is an extraordinary remedial process which is awarded, not as a matter of right, but in the exercise of a sound judicial discretion. It issues to remedy a wrong, not to promote one; to compel the performance of a duty which ought to be performed, not to direct an act which will work a public or private mischief or will be within the strict letter of the law but in disregard of its spirit. Although classed as a legal remedy, its issuance is largely controlled by equitable principles."

In United States v. Mellon, Secretary of the Treasury, 59 App. D. C. 24, 32 F. (2d) 415, 418, the court quoted from U. S. v. Deming, 57 App. D. C. 223, 19 F. (2d) 697, as follows: "The purpose of mandamus is not to establish a legal right but to enforce one already established; hence the legal right of relator to the performance of the particular acts of which performance is sought must be clear and complete. It has been said with good reason that the right to its performance must be so clear as not to admit of reasonable doubt or controversy." See, also, In re Skinner & Eddy Corp., 265 U. S. 86, 96, 44 S. Ct. 446, 68 L. Ed. 912, 915, opinion by Taft; 38 C. J. 582; 18 R. C. L. 128, § 41, Mandamus. Town of Bennington v. Booth, 101 Vt. 24, 140 A. 157, 57 A. L. R. 156.

Section 3006, R. C. 1919, is in part as follows: "The writ of mandamus may be issued * * * to any * * * person, to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station. * * *"

In Woodcock v. Board of Education, 55 Utah, 458, 187 P. 181, 186, 10 A. L. R. 181, the Utah statute being substantially identical with the foregoing, the court said: "This court has repeatedly held that where public officers are sought to be coerced by a writ of mandate to do certain acts the right of the plaintiff to have the act performed must be clear, and the corresponding duty upon the officer to do the required act must be correspondingly clear." To the same effect is State v. Kanawha County, 78 W. Va. 168, 88 S. E. 662, 20 A. L. R. 1030; Hegewald Co. v.

State, 196 Ind. 600, 149 N. E. 170, 43 A. L. R. 775; State v. Willis, 18 N. D. 76, 118 N. W. 820.

In Bailey v. Lawrence County, 2 S. D. 533, 51 N. W. 331, 332, the court said: "To entitle a party to a writ of mandamus, he must have a clear legal right to have a service performed by the party to whom he seeks to have the writ directed. Mandamus will only issue to compel action when the right of the relator is clear. The legal right of the party to that which he demands in the writ must be clearly established. These are elementary principles, which hardly need to be stated. People v. Supervisors, 11 N. Y. 563; State v. Kavanagh, 24 Neb. 506, 39 N. W. 431; [People ex rel.] Pack v. Supervisors, 36 Mich. 377; Fitch v. McDiarmid, 26 Ark. 482. The validity of the bonds and coupons being controverted, and relator's legal right not being clearly established, the writ cannot be issued until this is done. This is a question for the trial court to determine. * * * Mandamus would not lie to compel the payment of these alleged obligations while there was doubt as to their validity or the liability of the county to pay them."

In Halverson v. Williams, 38 S. D. 176, 160 N. W. 730, it was held that the granting of a writ of mandamus is not a matter of absolute right, and that, where there is reason to doubt the propriety of issuing it, it should be refused. In Hardy v. Purington, 6 S. D. 382, 61 N. W. 158, 160, warrants signed by the chairman and clerk of the school board were presented to the treasurer who refused to pay the warrants claiming that the teacher to whom they were issued had no certificate and therefore her contract was void. The court said: "If the contract was void, it imposed no liability upon the school district, and a warrant assuming to represent a liability which did not exist would be illegal. Such a warrant the treasurer was under no obligations to pay, although appearing upon its face to be regularly drawn. Respondent's contention that the functions of the treasurer were simply ministerial, and that it was his legal duty to pay or accept all warrants or orders appearing to be regularly drawn, is not tenable. He was not obliged to accept orders illegally drawn, and the courts will not by mandamus compel him to do so. Evans v. Bradley, 4 S. D. 83, 55 N. W. 721; Keller v. Hyde, 20 Cal. 593; High, Extr-Rem. 285."

The foregoing principles, when applied to the facts of the case

at bar, compel the conclusion that respondent was not entitled to the peremptory writ of mandamus. Granting that ordinarily the function of countersigning warrants is a merely ministerial function on the part of a chairman of a district board, respondent has shown no clear legal right to have the service performed which he seeks to coerce. On the contrary, he seeks to have the chairman countersign a warrant which it would be the duty of the treasurer, being advised of the illegality of the claim, to refuse to pay. This view of the case renders unnecessary the determination of the constitutional question presented, if, indeed, the application of the principles stated in Synod of Dakota v. State, 2 S. D. 366, 50 N. W. 632, 14 L. R. A. 418, leaves any constitutional question undetermined.

The judgment and peremptory writ thereon must be, and they are, reversed.

MISER, C., sitting in lieu of ROBERTS, J., disqualified.

POLLEY, P. J., and CAMPBELL, WARREN, and RUDOLPH, JJ., concur.