53 N.W.2d 210 (1952)
In re McNAIR'S ESTATE.
FARRINGTON et al.
v.
RICHARDSON et al.
No. 9270.
Supreme Court of South Dakota.
May 1, 1952.
Rehearing Denied July 7, 1952.
*211 Chas. R. Hatch, William J. Srstka, Wessington Springs, R. H. Armstrong, Phoenix, Ariz., for appellants.
Churchill & Churchill, Huron, for respondents.
SICKEL, Presiding Judge.
The olographic will of Ella McNair was admitted to probate in Beadle county and Clarence Kip Richardson was appointed administrator with the will annexed. His final account and petition for distribution was filed, and after hearing the account was settled and decree of distribution was entered in the county court. From these orders an appeal was taken to the circuit court by the heirs of testatrix. The only question decided by the circuit court was the interpretation of paragraph XIV of the will, and it is from that decision that the heirs have appealed to this court.
Paragraph XIV of the will reads as follows: "I give, devise and bequeath unto George E. Longstaff (not Royl & Longstaff) as trustee and in trust the following properties and all the rest and remainder thereof The trustee is to hold the same, pay taxes and repairs thereon and pay to Cecil Richardson $1000 each year from the net proceeds and to hold the remainder in trust for ten years when it may be paid to said Cecil Richardson, if he is living and if not, it may be turned to Huron College to found a scholarship fund for needy worthy ambitious students. This to be known as the J D McNair scholarship fund." Then follows a description of the property affected by the above paragraph of the will. A photographic copy of the above paragraph is set forth in Re McNair Estate, 72 S.D. 604, 38 N.W.2d 449, 452.
The circuit court decided: "Cecil Richardson, named in Paragraph XIV of the Will, died fourteen days before Ella McNair departed this life. His death before hers eliminates and nullifies the provisions of the Will for him, whether they were valid or invalid. But the elimination of the provisions in Paragraph XIV for Cecil does not destroy the fourteenth paragraph or leave the balance of Paragraph XIV without effect. The provisions of Paragraph XIV for Cecil can be eliminated without doing violence to the general testamentary scheme or plan expressed by Ella McNair in this paragraph; and with the ineffectual provisions for Cecil eliminated, this paragraph of the Will devises and bequeaths all the rest and remainder of her estate, including the property therein described as well as any other of her property not previously disposed of, to Huron College to found the J. D. McNair scholarship fund for needy, worthy, ambitious students."
Appellants contend that "the error here consisted in the finding that the concededly intended attempted but illegal trust may be eliminated, and by such elimination automatically converted into a general residuary clause, for the reason that when such intended trust is eliminated it leaves nothing, and it is clear from the language voiced by the decedent that she intended no residuary clause and intended to dispose of the income only from the properties for a ten-year period, and had not intended that Cecil Richardson should have any part of the principal of such properties and intended that Huron College should have nothing except what Cecil would receive, if he did not survive the ten-year period".
The first consideration is the contention of appellants that the trust for Cecil Richardson created a perpetuity and suspension of the power of alienation as to the property described therein and that it is void under SDC 51.0231, 51.0232 and 51.0417, and appellants' further contention that when such trust is eliminated paragraph XIV is ineffectual for any purpose and the property described in that paragraph of the will passes to the heirs at law as property not disposed of by the will.
The bequest to Cecil Richardson was placed in trust for a term of ten years after the death of testatrix, and was postponed until the expiration of the term. It was contingent on the possible death of Cecil Richardson before the expiration of the term. If Cecil Richardson should live until the end of the term he would receive the entire bequest contained in paragraph XIV of the will and Huron College would take nothing. The bequest to Huron College *212 was also postponed until the expiration of the ten-year term and it was contingent on the probability or possibility that the life of Cecil Richardson might extend beyond the end of that term. According to the will, if Cecil Richardson should die before the expiration of the term the future interest of Huron College could not vest in anyone, and the power of alienating the property would be suspended, from the date of death until the expiration of the term and this would violate the rule against perpetuities. 41 Am.Jur., Perpetuities and Restraints on Alienation, § 3. The death of Cecil Richardson did occur before the expiration of the ten-year term and respondents concede that the bequest to Huron College cannot be sustained if the devise to Cecil Richardson is to be considered.
It conclusively appears from the evidence that Cecil Richardson died fourteen days before the death of the testatrix and respondents contend that this event extinguished the trust in his favor. SDC 59.0215. The fact of suspension and postponement, or the term thereof, is determined with reference to the circumstances existing at the time the will took effect. 48 C.J., Perpetuities, § 112; 70 C.J.S., Perpetuities, § 45f. The above text in Corpus Juris Secundum states the rule as follows: "Where a person by whose life a suspension or postponement is attempted to be measured is dead when the instrument takes effect, the limitation is to be read as if it contained no provision for suspension or postponement during such life; and so, where a will according to its terms would create a suspension for an excessive period, but before the death of the testator one or more of the measuring lives has expired, the limitation is not invalid if the remaining provisions do not create an illegal suspension."
The application of the above rule is demonstrated in the case of Tallman v. Tallman, 3 Misc. 465, 23 N.Y.S. 734, 738. There the will devised a life estate to the wife of testator, and the remainder to the two children of an adopted daughter on condition that the survivor of the two daughters marry and have issue, otherwise to the residuary legatees. The death of the wife occurred before that of the testator. The residuary legatees claimed that the devise suspended the power of alienation for more than two lives in being and therefore violated the rule against perpetuities. The court said: "But the will speaks as of the time of the testator's death, and whatever might have been the effect, had Maria E. Tallman, his wife survived him, matters not, as by her death before him the legacies and devises to her lapsed, and are not to be considered in estimating the terms within which alienation is restrained, or the absolute ownership suspended. The death of the testator's wife before his death leaves it as if she had not been named in the will." By the death of Cecil Richardson before that of testator the devise to him lapsed, and the part of paragraph XIV relating to that devise is not to be considered in the interpretation of the will.
Respondents contend that "Paragraph XIV is a residuary clause; it is a disposition of all that part of the estate not theretofore disposed of. The language `all the rest and remainder thereof' is appropriate language for disposing of the residue of the estate." This interpretation of the will would give to Huron College all the property specifically described in paragraph XIV with the net income thereof and all other property belonging to testatrix at the time of her death but not otherwise disposed of by a specific bequest or devise, and the circuit court so held.
The property devised to Longstaff, as trustee, by paragraph XIV is "the following properties and all the rest and remainder thereof". A particular description of the "following properties" is made a part of that paragraph of the will. The description consists of seventeen tracts of farm and town property, notes with the names of the makers, bonds, bank deposits and savings bonds. The respondents' interpretation of this clause is in effect a substitution of the words "my estate" for "thereof". They reconstruct the clause to read "the following properties and all the rest and remainder of my estate". "Thereof", as here used means of the properties *213 previously designated, that is, of those properties described in paragraph XIV of the will.
Both sides dwell upon the word "remainder" as used in the clause now being considered. Testatrix was here drafting the Longstaff trust. She first made the bequest to Longstaff as trustee, then she identified the property upon which the trust was to operate. Apparently she considered some additional phrase or expression necessary or appropriate to show her intention to dispose of her entire interest in the designated properties and for that purpose added the phrase "and the rest and remainder thereof". The word "remainder" as here used could have no other significance.
The next clause of paragraph XIV of the will empowers the trustee to hold the properties, "pay taxes and repairs thereon and pay to Cecil Richardson $1000 each year from the net proceeds * * *". From this language it appears that the testatrix intended the trustee to hold the property, collect the rents and profits and pay the expenses.
The testatrix then continues "and to hold the remainder in trust for ten years * * ". "A remainder is a remnant of an estate in land, depending upon a particular prior estate created at the same time and by the same instrument and limited to arise immediately on the determination of that estate and not in abridgement of it." 21 C.J., Estates, § 130; 31 C.J.S., Estates, § 68; 4 Kent Comm. p. 197. Here the prior estate is the Longstaff trust in all the property described in paragraph XIV of the will and the net income thereof. The first remnant was to be the Cecil Richardson devise, limited to arise immediately on the determination of the Longstaff trust. This was the remainder contingent upon the life of Cecil Richardson and which lapsed because the remainderman died before the will went into effect. Then came the devise to Huron College as the remnant of the Longstaff trust, also limited to arise on the determination of the Longstaff trust. As we see it paragraph XIV of the will is an effectual devise of the specific property described therein. It disposed of the remainder of the Longstaff trust but did not dispose of the residue of the estate of testatrix.
In appellants' reply brief they say: "It is clear that in no event was there any intention on the part of the deceased that Huron College was to be a beneficiary. The beneficiaries were "`needy, worthy, ambitious students'", and "Huron College is not designated as a trustee to make the selection * * *". On this premise they contend that the trust is absolutely void.
That the devise to Huron College to "found a scholarship fund for needy worthy ambitious students" is a charitable use cannot be doubted. In the case of Vidal v. Girard's Executors, 2 How. 127, 43 U.S. 127, 11 L.Ed. 205, 231, the opinion of Justice Story says: "Not only are charities for the maintenance and relief of the poor, sick, and impotent, charities in the sense of the common law, but also donations given for the establishment of colleges, schools, and seminaries of learning, and especially such as are for the education of orphans and poor scholars". These uses are regarded by the courts "as present interests, vested in the charitable institution, and consequently not within the scope of the rule" against perpetuities. 48 C.J., Perpetuities, §§ 21, 78, 70 C.J.S., Perpetuities, §§ 2, 30.
On the subject of charitable gifts Gray on Perpetuities, Third Edition, says: " § 590. As has been shown, the natural meaning of `a perpetuity' is `an inalienable indestructible interest.' In this sense charitable trusts are perpetuities. And this is no arbitrary doctrine, but arises from the nature of such trusts. For while, generally, a trust is not good unless there be a natural or artificial cestui que trust, charitable trusts are an exception. They are recognized as valid, but yet they do not ordinarily have any definite cestuis que trust. They are therefore inalienable, because there is no one to alienate them. No one has any alienable rights, because no one has any rights. § 591. But the Rule against Perpetuities is not directed at preventing the alienation of present interests, but against the creation of remote future interests. Now while it is true that the nature of charitable trusts makes them inalienable, *214 and therefore perpetuities, in the natural sense of that term, it is by no means a necessary incident of charitable trusts that they should be allowed to begin in the remote future; or, in other words, that they should be exempt from the operation of the Rule against Perpetuities. The law may have exempted them, but such exemption is not involved in the conception of a charity." The question of indefiniteness therefore presents no problem under the rule against perpetuities so far as the trust for charitable purposes is concerned. A problem of remoteness arises out of the fact that the devise is first to Longstaff, trustee, for a term of ten years and then to Huron College.
Gray on Perpetuities, § 607, says on the subject of remoteness: "If the Court, however, can see an intention to make an unconditional gift to charity (and the Court is very keen-sighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and therefore not within the scope of the Rule against Perpetuities".
Ingraham v. Ingraham, 169 Ill. 432, 48 N.E. 561, 564, 566, 568, 49 N.E. 320, was an action brought for the construction of a will and to set it aside as null and void. The devise in question was to trustees to retain, manage, control and invest it, pay expenses of management of the trust until the fund should equal $100,000 and then cause it to be used for the erection and maintenance of a hospital and "that said hospital shall provide for the poor and the needy, as far as it may be possible to do so, without charge" or "with the least possible cost". It was claimed that this devise violated the rule against perpetuities. As the court stated it the question to determine was whether or not the devise was "a present and immediate estate, or does it depend for its existence upon the occurrence of some future event, which may not happen within a life or lives in being, * * *." In a well considered opinion the court reached this conclusion: "The immediate and unconditional devotion of a fund to charity, and not the time or manner of its application or administration, is the test of the validity of its creation." Applying the above rules to the facts the court said: "Here the fund goes at once and directly to the trustees, for the benefit of the hospital; and no intermediate estate is created, to be enjoyed by any donee or devisee, between the testator's death and the application of the fund to charity. There is no gift prior to the gift to the hospital, and no first taker having precedence over the hospital. The enjoyment or application of the fund is not postponed to await the expiration of any antecedent estate. Charity takes the fund immediately, and awaits only the period of accumulation before it may enjoy that which is presently given."
Here the trust property is to be retained and managed by a trustee for a term of ten years, and then transferred to Huron College and to be then used in aid of needy, worthy, ambitious students. The devise is unconditional. No intermediate estate was created for anyone between the testatrix' death and the time for the application of the property to charity. There was no gift of any interest in the property or the income thereof prior to that of the college, and consequently there was no first taker having preference over the college. The application of the property to charity was not postponed to await the expiration of an antecedent estate. Therefore the property vests in the college immediately, and the privilege of adapting it to charitable use awaits the expiration of the ten-year term.
The judgment is reversed and the cause is remanded with directions to modify the judgment in conformity with the views herein expressed.
All the Judges concur.