59 N.W.2d 727 (1953)
In re GEPPERT'S ESTATE.
GEPPERT et al.
v.
WINANS et al.
No. 9354-a.
Supreme Court of South Dakota.
August 5, 1953.
R. A. Bielski, Sioux Falls, Harold Dean Brown, Gann Valley, Max Royhl and Boyd M. Benson, Huron, for contestants and appellants.
Churchill & Churchill, Huron, Tom Kirby, Sioux Falls, for respondents.
KNIGHT, Circuit Judge.
Herman J. Geppert, then a resident of Buffalo County, South Dakota, and the owner of property of the value of about one million dollars, died on September 25, 1951, having theretofore on July 16, 1947, *728 of his own volition, duly executed in writing his last will and testament, which, with a codicil thereto thereafter executed, was established and admitted to probate by a judgment of the Circuit Court of said county, made and filed on May 26, 1952, from which this appeal was taken by heirs at law of testator who timely filed a contest to said will.
The trial de novo which culminated in said judgment was upon appeal from an order of the county court of said county, and upon said trial, pursuant to a stipulation of the parties, the court considered and determined the validity and interpretation of the following provisions of said will:
"Third: I authorize and direct my executors hereinafter named as soon as may conveniently be done after my death to sell all the residue of my estate at either public or private sale for cash. After the payment of all proper charges against my estate I give, devise and bequeath such cash residue as follows: * * *
"(c) To the Catholic Bishop of the Diocese of Sioux Falls, South Dakota, all of the rest, residue and remainder of my estate, after payment of bequests "a" and "b" hereof, the same to be used by such Bishop and his successors, in support of the work of the church in the poorer parishes of the Diocese, in such manner as they see fit, except that it must all be used in South Dakota."
The judgment appealed from is based upon a formal decision previously made and filed, in which the trial court found and decreed:
"That Paragraph Third (c) of said will creates a valid charitable trust in which the Catholic Bishop of the Diocese of Sioux Falls, South Dakota, and his successors in office is the Trustee, and the Catholic Church of the Diocese of Sioux Falls, South Dakota, is the beneficiary."
Bequests "a" and "b" above mentioned are for one thousand dollars each to two designated Catholic Churches.
Paragraph "Seventh" of said will is as follows:
"My relatives have been intentionally omitted herefrom."
The said codicil executed March 17, 1951, directs the payment of ten dollars to testator's stepmother and five dollars each to his half-sister and his surviving brothers and sisters, and states:
"I have intentionally omitted my deceased brothers and sisters and all of my nieces and nephews herefrom."
The undisputed testimony of the respondent, William O. Brady, discloses that he is the present Catholic Bishop of the Diocese of Sioux Falls, duly appointed by the Pope of the Roman Catholic Church and that under the Canon Law of such church his successors will be so appointed; that said diocese is that part of the Catholic Church in South Dakota which lies east of the Missouri River; that as originally established by Pope Leo XIII in 1889 it included the entire state but was reduced to its present territorial boundaries in the 1900's. Under said Canon Law such bishop is the supervisor of all property in the name of any religious corporation subordinate to that diocese, and such bishop is the president of every such corporation, and that under such Canon Law parishes have absolutely no authority over money or property included in bequests to the bishop and any appeal to state courts by members of the parishes to assert rights to portions of such funds is contrary to such Canon Law.
Bishop Brady further testified that a "poorer parish" would be understood to be one not fully developed or in debt; that said Canon Law obligates a bishop to carry out the exact provisions of any will according to the law of the state in which it is effective, and stated:
"* * * I would be obligated in conscience by Canon Law, and * * I would be civilly obligated by the law of the State of South Dakota to carry out the exact provisions of the court, whatever that might be."
*729 The evidence also discloses that "The Diocese of Sioux Falls" is the name of a corporation incorporated in 1915 by and consisting of five persons, one of which is the bishop, but this bequest is not for the benefit of that corporation and the bequest to the bishop is ineffectual to vest any interest in the subject of the trust created in said corporation.
Appellants base their appeal solely upon six points of alleged invalidity of paragraph Third (c) above quoted: (1) The will creates a trust, (2) The will does not create an exclusively charitable trust, (3) This is not a valid trust in South Dakota, (4) Private trusts are invalid if beneficiaries uncertain, extends beyond lives in being, trustee given unbridled authority, ambiguous in terms and court jurisdiction ousted, (5) If the will is permitted to stand there will be no beneficiaries capable of enforcing the trust, and (6) The judgment is not supported by the evidence.
Appellants' third point merits first consideration. We have no statutory enactment which defines, authorizes or prohibits charitable trusts or trusts for the benefit of the public. Prior to the recodification in 1939, statutory trusts were classified as voluntary and involuntary, C.L. of 1887, § 3911; R.C. 1919, § 1185, and are now termed express and implied, SDC 59.0101, which also provides:
"* * * An express trust is an obligation arising out of a personal confidence reposed in and voluntarily accepted by one for the benefit of another."
We have no statutory classification of trusts as private or public. SDC 59.0301, relied upon by appellants as limiting the purposes for which trusts may be created in this state, by its terms applies only to uses and trusts in relation to real property and is inapplicable in this case as the subject of the trust under consideration consists exclusively of personal property.
Statutes relating to express trusts are in part as follows:
SDC 59.0104: "* * * Except as otherwise prescribed by chapter 59.03 concerning trusts and uses in relation to real property and by chapters 51.13 and 51.14 relating to transfers, a trust may be created for any purpose for which a contract may lawfully be made."
SDC 59.0105 is in part as follows: "Subject to the provisions of section 59.0303 concerning express trusts in relation to real property an express trust is created as to the trustor and beneficiary by any words or acts of the trustor indicating with reasonable certainty:
"An intention on the part of the trustor to create a trust, and
"The subject, purpose, and beneficiary thereof; * * *."
SDC 59.0211 "A discretionary power conferred upon a trustee is presumed not to be left to his arbitrary discretion but may be controlled by the Circuit Court, if not reasonably exercised, unless an absolute discretion is clearly conferred by the declaration of trust."
SDC 33.26 relates to the administration of trust estates, and SDC 33.2601 defines a "court trust" as any trust which is established or confirmed by the judgment, decree or order of any court of record of this state or any foreign jurisdiction.
The fundamental distinction between private trusts and public or charitable trusts is that in the case of a private trust property is devoted to the use of specified persons who are designated as beneficiaries of the trust; whereas in the case of a charitable trust property is devoted to purposes beneficial to the community, which are ordinarily held to include not only the relief of poverty but the advancement of education and religion, the promotion of health and the general welfare.
The cases cited by appellants in support of their position on this point were decided more than fifty years ago and at that time presented a minority view. A very few of the numerous authorities sustaining charitable trusts are listed: Russell v. Allen, 107 U.S. 163, 2 S.Ct. 327, 27 L.Ed. 397; Hagen v. Sacrison, 19 N.D. 160, 123 N.W. 518, 26 L.R.A.,N.S., 724; In re Funk's Estate, *730 353 Pa. 321, 45 A.2d 67, 163 A.L.R. 780 and note; Harrington v. Pier, 105 Wis. 485, 82 N.W. 345, 76 Am.St.Rep. 924; Phillips v. Chambers, 174 Okl. 407, 51 P.2d 303; In re McNair's Estate, S.D., 53 N.W. 2d 210; In re Small's Estate, Iowa, 58 N. W.2d 477; 10 Am.Jur. 591; Annotation in 14 L.R.A.,N.S., 49.
In Russell v. Allen, supra [107 U.S. 163, 2 S.Ct. 330], the court said:
"By the law of England from before the statute of 43 Eliz. c. 4, and by the law of this country at the present day, (except in those States in which it has been restricted by statute or judicial decision, as in Virginia, Maryland, and more recently in New York), trusts for public charitable purposes are upheld under circumstances under which private trusts would fail. Being for objects of permanent interest and benefit to the public, they may be perpetual in their duration, and are not within the rule against perpetuities; and the instruments creating them should be so construed as to give them effect if possible, and to carry out the general intention of the donor, when clearly manifested, even if the particular form or manner pointed out by him cannot be followed. They may, and indeed must, be for the benefit of an indefinite number of persons; for if all the beneficiaries are personally designated, the trust lacks the essential element of indefiniteness, which is one characteristic of a legal charity. If the founder describes the general nature of a charitable trust, he may leave the details of its administration to be settled by trustees under the superintendence of a court of chancery; and an omission to name trustees, or the death or declination of the trustees named, will not defeat the trust, but the court will appoint new trustees in their stead."
In Phillips v. Chambers, supra [174 Okl. 407, 51 P.2d 310], the court said:
"A careful consideration of those cases and the reasoning therein contained convinces us that charitable trusts were recognized and upheld at common law independent of any consideration of the English statute of charitable uses. [Citing cases.] Our statute makes the common law supplementary to our legislative enactment, * * * and the common law thus brought into this jurisdiction includes that portion of the law which excepted charitable trusts from the application of the rules against restraints on alienation. We also conclude that our statutory rules against restraints on alienation and dealing with the purposes for which express trusts can be created and the duration thereof have reference to restraints on alienation of property vested in private individuals or corporations and to the duration of private, as distinguished from charitable, trusts."
"Except as otherwise provided by statute, there are no restrictions on the power of the owner of property to create charitable trusts which are not equally applicable to private trusts." Restatement of the Law, Trusts, § 362, p. 1128.
In a very recent case, In re McNair's Estate, supra, we recognized the validity of a charitable trust in this state and pointed out the inapplicability of the rule of definiteness of beneficiaries which applies to private trusts and also that charitable trusts do not come within the scope of the rule against perpetuities.
As to appellants' points (1) and (2), it is conceded that the quoted portion of the will does not constitute a direct bequest but does create a trust. The circuit court so found. It is conceded by appellants that the advancement of "religion" is a charitable purpose. We have no hesitancy in holding that "The work of the church in the poorer parishes of the Diocese" is an exclusively charitable purpose and a sufficiently definite designation of beneficiaries.
One of the fundamental principles upon which our country was founded is complete religious liberty and separation of church and state. Government may not participate in the establishment or dissemination of religion of any sort, and thus religious societies and churches must depend for the support of their important work, upon the *731 eleemosynary contributions of individuals, and the law esteems this as a charitable purpose.
"* * * As the term `church' imports an organization for religious purposes, a gift to a church or a church society by name, without declaration or restriction as to use to be made of the subject matter of the gift, must be deemed to be a gift for the promotion of the purposes for which the church was organized and, therefore, to be a gift for a charitable purpose and to be valid if the other elements of a valid charitable gift exist. * * *" 14 C.J. S., Charities, § 17. In re Harrington's Estate, 151 Neb. 81, 36 N.W.2d 577; Williams v. Williams, 215 N.C. 739, 3 S.E.2d 334; 10 Am.Jur. 626 and cases cited; In re Small's Estate, supra; In re Quinlan's Estate, 233 Minn. 35, 45 N.W.2d 807.
The designation of the "poorer parishes" in the will places a restriction upon the trustee but does not render the beneficiary so indefinite as to affect its validity.
"Indefiniteness of beneficiaries is one of the characteristics of a public charity or a charitable use." 11 C.J., Charities, § 59b, 14 C.J.S., Charities, § 39.
The validity of trusts for the benefit of "the poor" and like classes is discussed in Hollenbeck v. Lyon, 142 Kan. 352, 47 P.2d 63, 99 A.L.R. 652, and in an annotation in 99 A.L.R. 657.
Some of the matters set forth in appellants' points (4) and (5) have already been discussed. The trust created is a "court trust" as defined by SDC 33.26. The trustee must qualify and administer the trust in the manner provided by that chapter. The trustee will, subject to the control of the Circuit Court, exercise a broad discretion in determining how and in what parishes the trust funds will be expended, subject to the express provision of the bequest that the same must be used "in support of the work of the church in the poorer parishes of the Diocese" and, "it must all be used in South Dakota".
The Attorney General is a proper party to take action to enforce the trust if necessary. Restatement of the Law, Trusts, § 391; 10 Am.Jur. 668, § 115.5; Schaeffer v. Newberry, 227 Minn. 259, 35 N.W.2d 287; In re Grblny's Estate, 147 Neb. 117, 22 N.W.2d 488. See also 31 C.J., Information in Civil Cases, § 2, 7 C.J.S., Attorney General, § 8.
The importance of sustaining the individual right of every person to devote his private fortune to the public good is very apparent, and charitable trusts have been liberally construed to that end. While testator lived he could not have been required to contribute any amount whatever for any purely religious or charitable purpose. S.D. Const. Art. VI, § 3; Synod of Dakota v. State, 2 S.D. 366, 50 N.W. 632, 14 L.R.A. 418; Hlebanja v. Brewe, 58 S.D. 351, 236 N.W. 296. He clearly expressed in his will the purpose to which he desired his fortune, apparently the result of a life of industry, to be devoted. During the more than four years which elapsed between the execution of his will and his demise, he no doubt was solaced with the thought that the expenditure provided for would build an enduring monument to his memory in the form of church edifices as well as in the minds of grateful members of the church to which he belonged, and the general public in that part of South Dakota in which he was known. The laws of this state do not require the diversion of this fund from the religious and charitable use to which testator clearly intended it should be devoted, to the benefit of his relatives which he clearly indicated should not receive it.
The religious affiliation of testator was properly considered by the trial court. 10 Am.Jur. 660, § 105; Chaddock v. American Baptist Home Mission Society, 46 S.D. 346, 192 N.W. 742, Annotations in 14 L.R. A.,N.S., 151, and 94 A.L.R. 88.
The intention of the testator, which is controlling, is clearly shown by the will and the evidence presented. Charitable trusts are recognized and valid in this state and should be liberally construed. There is no uncertainty as to the trustee *732 intended, the same being the Bishop of the Roman Catholic Church of the Sioux Falls Diocese and his successors. The beneficiary is the Roman Catholic Church of the territorial division known as the Sioux Falls Diocese, but the fund is to be used in the poorer parishes of that diocese and must all be expended in South Dakota.
The judgment of the circuit court is affirmed.
SMITH, RUDOLPH and LEEDOM, JJ., concur.
SICKEL, J., concurs specially.
KNIGHT, Circuit Judge, sitting for ROBERTS, P. J., disqualified.
SICKEL, Judge (concurring).
The object of the trust is the "work of the church in the poorer parishes of the Diocese" in South Dakota. This provision of the will confers a public benefit, open to an indefinite number of persons, and the trust is therefore charitable. The beneficiaries have been designated as a class, and are ascertainable with reasonable certainty. 14 C.J.S., Charities, §§ 17, 39. I therefore concur in affirming the decision of the circuit court.