2003 SD 60

**BANNER HEALTH SYSTEM,
Plaintiff,**

**v.**

**Lawrence E. LONG, in his official capacity as Attorney General of South Dakota, Defendant.**

**No. 22543.**

Supreme Court of South Dakota.

Argued March 24, 2003.

Decided May 21, 2003.

Lonnie R. Braun of Thomas, Nooney, Braun, Solay & Bernard, Rapid City, South Dakota, and Patrick J. Kelleher, Patrick S. Coffey, Peter C. Koch of Gardner, Carton & Douglas LLC, Chicago, Illinois, Attorneys for plaintiff.

Lawrence E. Long, Attorney General, Mark W. Barnett, Chief Deputy Attorney General, Roxanne Giedd, Jeffrey P. Hallem, Assistant Attorney Generals, Pierre, South Dakota, Attorneys for defendant.

SABERS, Justice.

[¶ 1.] On March 8, 2002, Banner Health System (Banner) filed a complaint in the United States District Court for declaratory and other relief against the South Dakota Attorney General. Banner sought a ruling that it is governed solely by the state's nonprofit corporation law with respect to the sale of its facilities in South Dakota. The Attorney General filed a motion to dismiss. The district court denied the motion to dismiss and certified the following question to this Court:

> Whether the laws of South Dakota recognize any legal theory that would subject any of the assets of a nonprofit corporation or proceeds from the sale of those assets to an implied or constructive charitable trust in the absence of an express trust agreement.

[¶ 2.] This Court entered an order on October 10, 2002 accepting certification of the question. Upon consideration, we answer the question in the affirmative and hold that South Dakota law does recognize legal theories that would subject Banner's assets to an implied charitable trust assuming certain alleged and disputed facts are established.

## FACTS

[¶ 3.] The Attorney General asserts detailed facts, which, if proven, could support

the imposition of an implied, resulting or constructive trust. Banner argues that the facts asserted by the Attorney General cannot be considered at all by this Court in deciding this question. Banner would unduly tie the Court's hands in an area of law which requires detailed factual analysis for proper legal determination. Therefore, we assume the following facts only for the purpose of answering the question posed by the Federal District Court. The Attorney General will of course be required to prove the facts in any subsequent proceeding.

[¶ 4.] For ease of discussion, we will discuss each facility's corporate history separately.

*Dorsett Home:*

[¶ 5.] The Dorsett Home is a nursing home in Spearfish that was created as a result of a 1974 express trust bequest through the will of Olive Dorsett. The will left $60,000 for the purpose of "building a home for aged and indigent persons in the city of Spearfish for the benefit of residents of Meade, Butte and Lawrence Counties." The South Dakota Hospital and Homes Association (SDHHA) solicited other donations including one from HW Clarkson for $63,000. The Dorsett trustees and SDHHA then received court approval for the distribution of assets from the estate to SDHHA for construction and operation of the home. The home was finished in 1955 with additional community donations of approximately $185,000 and land purchased from the city for substantially less than market value.

[¶ 6.] SDHHA subsequently changed its name to North Central Health and Retirement Homes Inc. and amended its articles of incorporation to provide that upon dissolution, any remaining corporate assets "would be distributed to the communities in which said assets are located."

[¶ 7.] In 1975, the company again changed its name to North Central Health Services Inc. (North Central). In 1985 the company amended its articles of incorporation to provide that on dissolution the remaining assets of the corporation would be distributed to communities in which the assets were located and to charitable, educational or scientific organizations.

[¶ 8.] In 1993, North Central merged into and became a subsidiary of Lutheran Hospitals and Homes Society (Lutheran), which is a North Dakota charitable nonprofit corporation. North Central then amended its articles of incorporation to eliminate the dissolution restriction that the remaining assets would be distributed to the community.

[¶ 9.] In 1993, North Central entered into an agreement with Western Health Network Inc. (Western) for gift and donation of the Dorsett home and all of its assets. At the time of the agreement, Western's corporate purpose was to engage in "charitable, scientific and education activities for the benefit of mankind generally."

[¶ 10.] In 1996 or 1997, Western merged with Lutheran and Lutheran became the surviving entity. At the time of the merger, Lutheran's purpose was "the operation, management, administration and maintenance of general hospitals, nursing homes, and other facilities used in caring for the ill, infirm, handicapped and aged persons." The name of the new entity became Lutheran Health Systems Inc. (Lutheran Health).

[¶ 11.] In August of 1999 Lutheran Health changed its name to Discovery Health System, a North Dakota nonprofit corporation.

[¶ 12.] In September of 1999, Discovery changed its name to Banner Health

System, and in June 2001, Banner changed its corporate domicile to Arizona.

*Lookout Memorial Hospital:*

[¶ 13.] Lookout Memorial Hospital is located in Spearfish. It was established through contributions from the community worth $110,000 and real property gifted to the Lookout Memorial Hospital Corporation. The corporation's purpose was to construct and maintain a hospital in Spearfish. On dissolution, the remaining assets were to be transferred to any public or nonprofit corporation capable of operating a hospital in Spearfish.

[¶ 14.] In approximately 1963, Lookout Corporation donated its assets to Lutheran for the purpose of constructing a hospital. Lutheran built and operated the hospital.

[¶ 15.] In 1988, Lutheran gifted and donated the hospital and its assets to Western. The remainder of Lookout's corporate history is the same as that noted above for the Dorsett home.

*Sturgis Hospital:*

[¶ 16.] Sturgis Hospital was constructed by the Community Memorial Hospital Association (CMHA) a nonprofit corporation incorporated in 1948. CMHA's corporate purpose was to establish and maintain hospitals and nursing homes within or without the city of Sturgis and to participate in any activity designed to promote the general health of the community.

[¶ 17.] In December of 1984, CMHA donated its assets to North Central. North Central's articles at the time still retained the dissolution restriction that the assets were to be distributed to the communities in which they were located. In 1987, North Central renovated and used part of the assets donated by CMHA in constructing and operating a new hospital and nursing home. North Central eventually merged with Lutheran. In 1993, North Central donated the facility and as-

sets to Western after North Central's merger with Lutheran. The remaining corporate history is the same as that noted above for the Dorsett Home.

*Belle Fourche Hospital:*

[¶ 18.] The Belle Fourche Hospital was constructed on land purchased with $25,000 donated by a community resident and community donations raised in a contribution drive in 1975. The donations were given to the Belle Fourche Health Care Center, Inc., a nonprofit South Dakota corporation. The purpose of the corporation was to provide hospital facilities. The corporation had a restriction on dissolution that assets were to be distributed to the community on dissolution. In 1975, the articles of incorporation were amended to allow distribution of assets on dissolution to another charitable nonprofit corporation. Belle Fourche eventually merged with North Central. At the time of the merger, the distribution of assets upon dissolution was restricted by the articles of incorporation such that the assets would go to the community in which the assets were located.

[¶ 19.] In June 1993, the hospital's assets were donated to Western after the North Central merger with Lutheran. The remaining history is the same as stated above regarding the Dorsett Home.

*Eureka Nursing Home:*

[¶ 20.] The Eureka Nursing Home was constructed in 1988 by North Central. At the time it was built, North Central's articles of incorporation still retained the dissolution restriction on distribution of assets. Part of the cost of building the home was paid by a $300,000 community development block grant given by the city to North Central. Over $80,000 was donated by the community for construction. North Central donated the home and its assets to Western in June 1993. The remaining

history is the same as that recited for the Dorsett Home.

*Rosebud Nursing Home:*

[¶ 21.] The Rosebud Nursing Home was constructed and operated by Rosebud Home, Inc., which was incorporated for the purpose of constructing the home. On dissolution, its assets were to be turned over to the Gregory County Board of Commissioners in trust to provide hospitalization and care for the elderly. The assets of the home were eventually donated to Lutheran which operated it until it merged with Western in 1996 or 1997. The remaining corporate history is as recited above. The Attorney General additionally alleges that title to the real property associated with the home is held by Western Hospital Corporation of South Dakota which is a wholly owned subsidiary of Banner and either will be or has already been dissolved.

*Gregory Hospital:*

[¶ 22.] In order to build the Gregory hospital, the community donated $400,000 through a fund drive in 1975. The hospital was constructed in 1976 by Lutheran. Lutheran operated the hospital until it merged with Western. The Attorney General further asserts that title to this land is also held by Western Hospital Corporation of South Dakota.

[¶ 23.] The Attorney General also alleges that in addition to gifts from the communities for construction, communities also provided other gifts and donations to the facilities. For example, Gregory held a fundraiser to purchase an ambulance and a dialysis unit which were given to the hospital. These gifts were part of the assets sold by Banner.

[¶ 24.] Banner is an Arizona charitable nonprofit corporation which operates a large nonprofit health care system. Ban-

ner has sold all of these facilities and their assets and intends to use the proceeds from the sale in support of its facilities located outside of South Dakota. While the sale was in progress, the Attorney General informed Banner that he believed the facilities were restricted by constructive charitable trusts and therefore the proceeds could not be removed from the communities in which the facilities were located. Banner filed its lawsuit in Federal District Court requesting a determination whether the facilities were restricted by constructive charitable trusts. Finding no controlling state law on the issue, the District Court certified the question to this Court.

[¶ 25.] **WHETHER THE LAWS OF SOUTH DAKOTA RECOGNIZE ANY LEGAL THEORY THAT WOULD SUBJECT ANY OF THE ASSETS OF A NONPROFIT CORPORATION OR PROCEEDS FROM THE SALE OF THOSE ASSETS TO AN IMPLIED OR CONSTRUCTIVE CHARITABLE TRUST IN THE ABSENCE OF AN EXPRESS TRUST AGREEMENT.**

[¶ 26.] SDCL 55–1–2 provides that trusts may be either express or implied. An implied trust is defined as one created by operation of law. SDCL 55–1–6. The South Dakota Legislature has enumerated several instances in which an implied[1] trust may be imposed. Of most significance to this question is SDCL 55–1–11 which provides that the enumeration by the Legislature of circumstances allowing imposition of an implied trust:

> does not exclude or prevent the arising of an implied trust in other cases nor prevent a court of equity from establishing and declaring an implied, resulting, or constructive trust in other cases and

1. Our use of the term "implied" trust herein includes resulting and constructive trusts.

instances pursuant to the custom and practice of such courts.

As its name suggests, an implied trust requires no express trust agreement. An implied trust is used by the courts as a remedial device to restore the status quo and is therefore utilized when "a person owning title to property is under an equitable duty to convey it to another because he would be unjustly enriched if he were permitted to retain it." *Knock v. Knock,* 80 S.D. 159, 166, 120 N.W.2d 572, 576 (1963) (additional citations omitted).

■■■ [¶ 27.] This Court has held that charitable trusts are recognized in South Dakota. *In re Geppert's Estate,* 75 S.D. 96, 103, 59 N.W.2d 727, 731 (1953). A charitable trust is one wherein property is given for a purpose beneficial to a community, for example trusts for religious organizations, to help the poor in some manner, or for the advancement of science. Trusts for the promotion of health qualify as charitable. *Geppert's,* 75 S.D. at 101, 59 N.W.2d at 729. At common law, in order to have a charitable trust, there must be an express indication of the desire to have certain property held for a charitable purpose.[2] The elements for such a trust are property, a charitable purpose, indefinite beneficiaries, a trustee and a distinction between the equitable estate, which inures to the benefit of the beneficiaries, and the legal estate, which is held by the trustee.

■■ [¶ 28.] Banner argues that SDCL chapters 47–22 through 47–28, South Dakota's nonprofit corporation statutes, preclude application of trust principles to a nonprofit corporation. While nonprofit corporations are governed by nonprofit law, there is nothing in the code to indicate that the Legislature intended to abrogate

common law and statutory trust provisions with regard to nonprofit corporations.

■■ [¶ 29.] Rules of statutory construction require that the Court must read statutes together and to the extent possible, give effect to all of the language. Banner's assertion that the nonprofit corporation statutes are the only applicable law would essentially read the provisions in SDCL chapter 55–1 on implied trusts out of the law with regard to nonprofit corporations. We reject that assertion and therefore must look to the common law and statutory remedies to address this question.

[¶ 30.] The Attorney General argues first that under common law trust principles, gifts or donations to charitable nonprofit corporations are divided into two groups. The first group includes gifts given for a purpose which matches the purposes of the corporation. The second group is made up of those gifts with a purpose that is narrower than the purpose of the nonprofit organization receiving the gift. The Attorney General argues as his first theory that gifts falling into the second group are subject to an implied charitable trust. His argument that this Court has recognized his theory relies on two early South Dakota cases, *In re Havsgaard's Estate,* 59 S.D. 26, 238 N.W. 130 (1931) and *Geppert's Estate,* 75 S.D. 96, 59 N.W.2d 727 (see discussion of *Geppert's Estate* at ¶ 27). These cases provide little support for the first theory. Specifically, in *Havsgaard's Estate,* this Court was aware of the fact that the gift was to be used in support of *"part* of the purposes and powers of the [beneficiary]." *Havsgaard's Estate,* 59 S.D. 26, 238 N.W. at 132 (emphasis supplied). Although the opinion does not state the entire corporate purpose

---

**2.** At oral argument, Chief Deputy Attorney General Barnett represented that he was anxious to bring forth volunteers who were instrumental in the fundraising for these projects and the specific representations made by them to induce these donors to contribute.

of the beneficiary, it is clear from the language of the opinion that the purpose for which the gift was given was not the sole purpose for which the beneficiary corporation was formed. If the common law required imposition of an implied charitable trust when the purpose of the donation is narrower than that of the receiving corporation, the Court in *Havsgaard* would have been required to impose a constructive trust.

[¶ 31.] The Attorney General also cites numerous cases from other jurisdictions to support his first theory. Most of the cases cited by the Attorney General are factually distinguishable.[3] The majority of the case law cited by the Attorney General is insufficient to establish his contention that the common law allowed imposition of an implied charitable trust when the purpose of the gift is narrower than the purpose of the receiving corporation. However, there are two cases that appear to be more directly on point. In *Pacific Home v. Los Angeles County*, the California Supreme Court was faced with the question whether certain properties were "irrevocably dedicated" to exempt purposes so that they would qualify under the revenue and taxation code for a welfare exemption. The court stated that "all the assets of a corporation organized solely for charitable purposes must be deemed to be impressed with a charitable trust by virtue of the express declaration of the corporation's purposes, and notwithstanding the absence of any express declaration by those who contribute such assets as to the purpose for which the contributions are made."

*Pacific Home*, 41 Cal.2d 844, 852, 264 P.2d 539, 543 (1953). The Court thus held that a corporation's acceptance of assets under these circumstances would establish a charitable trust for the declared corporate purposes. The only other case cited by either party which is directly on point is *Kansas East Conference of United Methodist Church, Inc. v. Bethany Medical Center, Inc.*, 266 Kan. 366, 969 P.2d 859 (1998) where the Kansas Supreme Court held that a nonprofit charitable corporation running a hospital was governed by the State's nonprofit corporation law rather than trust law.

[¶ 32.] Our research shows little support in South Dakota law or the common law for the first theory advanced by the Attorney General. However, the Attorney General asserts a detailed fact pattern, which, if established, might support the imposition of an implied charitable trust under SDCL 55–1–11 based on theories of unjust enrichment, breach of fiduciary duties, and improper amendment of the charitable corporation's articles of incorporation.

[¶ 33.] The language of SDCL 55–1–11 provides the court of equity with broad power to impose an implied, resulting or constructive trust. Therefore, should the court find that Banner was unjustly enriched by the sale of the assets and removal of the proceeds from the local communities at the expense of those communities, the court would retain power to impose a constructive trust on those proceeds.

---

3. For example, several of the cases involved either express charitable trusts, *see e.g., Northwestern University v. Wesley Memorial Hospital*, 290 Ill. 205, 125 N.E. 13 (1919), or merely restate propositions already found in South Dakota's nonprofit corporation statutes. *See e.g., Town of Cody v. Buffalo Bill Memorial Association*, 64 Wyo. 468, 196 P.2d 369 (1948) (stating the proposition found in SDCL 47–26–30(3) that a nonprofit corporation is required to transfer its assets upon dissolution to another nonprofit corporation engaged in activities which are "substantially similar" to those of the dissolving corporation).

[¶ 34.] Furthermore, should the court find that an implied trust is warranted under SDCL 55–1–11, Banner and its corporate predecessors may be held accountable for breach of fiduciary duties to the communities. A "fiduciary includes any person or corporation which acts in a fiduciary capacity for an implied, resulting or constructive trust." SDCL 55–7–2. As a fiduciary, the corporation has an obligation to act in good faith and is prohibited from using the trust property for its own benefit or to take part in a transaction concerning the trust which would pose an interest adverse to the interests of the beneficiaries. *See* SDCL 55–2–1 and 55–2–3. Here, the Attorney General asserts as facts copies of letters written by Peter Fine, President and CEO of Banner stating that it is making the sale of the facilities "in the best interest of Banner" rather than the best interest of the communities served by the facilities. In addition, a fiduciary duty may arise from a factual relationship without regard to a trust. *See* SDCL 55–7–2(2); Black's Law Dictionary, 625 (6th ed.1990).

[¶ 35.] In summary, while we cannot accept the Attorney General's position that an automatic implied charitable trust arises whenever the purpose of the donation is narrower than the purpose of the receiving corporation, we find nothing in South Dakota law which would prohibit imposition of an implied or constructive charitable trust if Banner is proven to have established the elements noted at ¶ 27 *supra,* or breached a fiduciary duty or been unjustly enriched.

[¶ 36.] The Attorney General's next theory is that a nonprofit corporation may not amend its articles of incorporation in a manner that would alter the restrictions on the use and distribution of community-based assets already held by that corporation. The Attorney General asserts that

certain corporate predecessors to Banner amended their articles of incorporation to remove a restriction requiring that assets be returned to the community should the corporation be dissolved. Were it not for these amendments, the Attorney General argues, Banner would not have been able to sell the assets and remove the proceeds from the community.

[¶ 37.] North Central, a corporate predecessor to Banner at the Spearfish, Sturgis, Belle Fourche and Eureka facilities, amended its articles of incorporation in 1993 to remove a restriction that upon dissolution of the corporation, the assets would remain in the local communities. This amendment to the articles occurred after North Central acquired the South Dakota facilities. The Attorney General argues that trust and common law principles prevent a nonprofit corporation from making such a material amendment. Banner argues that SDCL 47–22–14, which authorizes a nonprofit corporation to amend its articles, controls.

[¶ 38.] SDCL 47–22–14 provides:

[a] corporation may amend its articles of incorporation, from time to time, in any and as many respects as may be desired, so long as its articles of incorporation as amended contain only such provisions as are lawful under chapters 47–22 to 47–28.

However, SDCL 47–22–22 provides:

*[n]o amendment to the articles of incorporation shall affect* any existing cause of action in favor of or against such corporation, or any pending action to which such corporation shall be a party, or *the existing rights of persons other than members;* and, in the event the corporation name shall be changed by amendment, no action brought by or against such corporation under its former name shall abate for that reason.

(emphasis supplied). The language of SDCL 47–22–22 limits the otherwise broad language of SDCL 47–22–12. To the extent that the Attorney General is able to prove that amendment of the articles affected the rights of nonmembers, we believe that a constructive charitable trust may be imposed on those assets donated to the local facilities before North Central amended its articles of incorporation. Any other rule of law would allow a charitable nonprofit corporation to eviscerate the charitable purpose for which it was formed without recourse for those who donated funds for that purpose. This result would be untenable because "the public could not be assured that funds it donated would be used for [proper] similar public charitable purposes." *Attorney General v. Hahnemann Hosp.*, 397 Mass. 820, 836, 494 N.E.2d 1011, 1021 (1986). Other courts have held that an amendment of a nonprofit corporation's bylaws for the purpose of changing the corporate purpose was an abuse of the charitable trust created in gifts given to the corporation prior to the amendment. *Los Angeles County Pioneer Society v. Historical Society of Southern California*, 40 Cal.2d 852, 257 P.2d 1, 7–8 (1953). The Eighth Circuit Court of Appeals has also recognized this theory holding that the corporation's power to amend its charter cannot be used to substantially change the purposes of the corporation as to assets previously gifted to the corporation. *Stevens Brothers Foundation, Inc. v. Commissioner of Internal Revenue*, 324 F.2d 633, 644 (8thCir.1963).

[¶ 39.] To the extent that a charitable trust is imposed on one of its predecessor corporations, Banner took the assets subject to that trust and would likewise be bound thereby. *See e.g. Town of Cody*, 64 Wyo. at 500, 196 P.2d at 381.

[¶ 40.] Based on SDCL chapter 55–1 and equitable principles, we believe that there are legal theories that would subject the assets of a nonprofit corporation or proceeds from the sale of those assets to an implied or constructive charitable trust even in the absence of an express trust agreement. We therefore answer the certified question in the affirmative. In addition, our enumeration of such theories herein is not intended to be exclusive, assuming other theories of legal liability can be established by the facts at trial.

[¶ 41.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.